STATE OF NEBRASKA, EX REL. CHARLES T. CRAWFORD, v. HOWARD A. GRAHAM.

Evidence examined, and *Held*, Sufficient to sustain the report of the referee.

Original information in *quo warranto*.

*Ledwich & Elliott* and *Abbott & Abbott*, for relator.

*Sullivan & Humphrey, Kilpatrick & Holcomb*, and *Cornish & Tibbets*, for respondent.

REESE, CH. J.

This is an action in the nature of a *quo warranto*, commenced in this court in the exercise of its original jurisdiction.

The office in dispute is that of trustee of the village of Broken Bow. An election for village officers was held on the 6th day of April, 1886, at which the following named persons were voted for, as shown by the relation, and received the number of votes indicated:

G. W. Trefren..............................................42
R. C. Talbot.................................................41
C. R. Pratt....................................................38
L. S. Treferen..............................................38
H. A. Graham...............................................37
C. W. Johnson..............................................37
C. T. Crawford.............................................35
J. A. Hershey...............................................36
C. E. Wheeler...............................................34
and Wm. H. Osborn......................................34

It appears from the record that Graham and Johnson having received the same number of votes, the tie was decided by lot according to law, Graham being thereby duly elected to the office of trustee.

Crawford now institutes this action against Graham, and alleges that a sufficient number of illegal votes were cast for Graham to change the result as between them, and that of the legal votes cast at such election, he received a majority and should be declared duly elected to such office.

By his answer Graham denies the allegations of the petition so far as they relate to the alleged illegal votes.

The cause was referred to M. F. Knox, Esq., to take the testimony and report the same to this court, together with his findings of fact. This he did, the finding being as follows:

"1st. That Edmund S. Cutler resided on block 31 in the original town of Broken Bow, and that on the 6th day of April, 1886, he voted at the election held for village trustees for said village.

"2d. That on the 22d day of June, 1883, a petition was presented to the board of county commissioners to vacate the following blocks, to-wit, 30, 31, and 32, in the original town of Broken Bow. The prayer of the petition was granted, and their decision affirmed by the judge of the district court on the 19th day of May, 1885.

"3d. That on the 5th day of January, 1885, there was a petition presented to the board of supervisors of Custer county, Neb., to incorporate the original town of Broken Bow, Neb.; the said petition included the aforesaid blocks 30, 31, and 32, and the petition was granted.

"4th. That the said Edmund S. Cutler et al., owners of the aforesaid blocks 30, 31, and 32, have been assessed and paid village taxes for the years 1885 and 1886.

"5th. That one James A. Preston resided and boarded within the corporate limits of Broken Bow, Neb., for ninety days prior to the 6th day of April, 1886, with one G. W. Trefren, by whom he was employed, except four or five days that he boarded with one McLendlas temporarily, who resided outside of the corporate limits of the village.

"6th. That on the 6th day of April, 1886, the said James A. Preston voted for Howard A. Graham for village trustee of the village of Broken Bow, Neb.

"7th. That Ira J. Shaul voted for Howard A. Graham on the 6th day of April, 1886, for village trustee of the village of Broken Bow.

"8th. That he, the said Ira J. Shaul, had boarded for ninety days prior to the 6th day of April, 1886, in Broken Bow, temporarily.

"9th.   That the said Ira J. Shaul's actual or intended residence was twelve miles east of Broken Bow, on his farm, on the said 6th day of April, 1886.

"10th.   That one George Provinsher came to Broken Bow on or about the 25th of January, 1886, and voted for C. T. Crawford for trustee of the village of Broken Bow.

"11th.   That the said Provinsher did not reside in the corporate limits of Broken Bow ninety days prior to the 6th day of April, 1886.

"12th.   That one A. S. Anterson was a resident of the village of Broken Bow for ninety days prior to the 6th day of April, 1886.

"13th.   That A. S. Anterson voted at the election held on the 6th day of April, 1886, for village trustees of the village of Broken Bow.

"14th.   That one L. S. Trefren voted for C. T. Crawford at the village election held on the 6th day of April, 1886.

"15th.   That some time the last of December, 1885, he sold his house and lots on which he resided in the village of Broken Bow and went to New Mexico, and his family removed to Hall county, Neb.

"16th.   That the said L. S. Trefren did not return to Broken Bow till the last of March, 1886.

"17th.   That the said L. S. Trefren did not return to Broken Bow with his family and reside in the village of Broken Bow, Neb., ninety days prior to the 6th day of April, 1886.

"18th.   That one Wiles voted for Howard A. Graham for trustee for the village of Broken Bow, on the 6th day of April, 1886.

"19th.   That the said John Wiles was a resident of the village of Broken Bow for 90 days prior to the said 6th day of April, 1886.

"20th.   That one Jesse Gandy, on the 6th day of April, 1886, offered to vote for Howard A. Graham for

trustee of the village of Broken Bow, Neb., and his vote was challenged and not accepted by the judge of election.

"21st.   That the said Jesse Gandy was not a resident of the village of Broken Bow, Neb., for 90 days prior to the 6th day of April, 1886.

"22d.   That Charles T. Crawford, on the 6th day of April, 1886, received 35 votes for trustee for the village of Broken Bow, Neb.

"23d.   That Howard A. Graham, on the 6th day of April, 1886, received 37 votes for trustee for the village of Broken Bow, Neb."

Exceptions were filed to this finding, by both relator and respondent.   These exceptions need not be here set out at length, but they will be briefly noticed in the order in which they occur in the testimony.

The first exception presented by relator is, that the referee failed to find for whom the vote of Edmund S. Cutler was given at said election.   The testimony of Cutler is before us, from which it is shown that he went to the polls on election day and was handed a ticket for each party represented at the polls.   He took one in each hand and tendered his vote, but was immediately challenged by some bystander.   The statutory oath was administered to him, and he testifies that in the act of taking the oath prescribed he placed both tickets in the same hand.   After the administration of the oath, he handed one of them to the judge of election, but does not know which of the two he voted, there being considerable confusion at that particular time. That he intended to vote the ticket on which respondent's name had been printed, but does not know certainly which ticket was placed in the ballot box, and that it was an impossibility for him to state.   In view of this testimony, the referee might well hesitate to find as to what ticket he actually voted; but however that may be, we can see no method of correcting this finding, as it is silent upon the question presented, and were a finding necessary, the

proper practice would be to have the case resubmitted to the referee in order that a finding might be made.

Objection is made by the relator to the finding that James A. Preston, who voted for respondent, was a legal voter. In our examination of the testimony, we are satisfied that this finding is fully supported by the proofs. He had his room and bed in Broken Bow. Being a single man, he took his meals at such places as were convenient, sometimes with the family of Mr. Trefren, and sometimes at other places. A few days before the election a brother of Mr. Trefren, with his family, came to Trefren's house, and there not being sufficient room for the accommodation of all, Mr. Preston temporarily removed his boarding place to that of a family living outside the corporation. But this was done only for a temporary purpose, and with no intention to change his residence. This finding of the referee is sustained.

The finding that Ira J. Shaul, who voted for respondent, did not reside in Broken Bow, and to which objection is made, is fully sustained by his testimony. Briefly stated it is, that at the time of the election his actual residence was on his farm, about 12 miles from the village, but that during the winter, for convenience, he had boarded, temporarily, within the corporation; that for some reason or other he did not consider it safe to remain alone upon his farm, which was a homestead, but considered that his home.

The finding that George Provincher was not a legal voter is also sustained by the testimony. Upon this question there was a sharp conflict, some witnesses testifying that he first came to Broken Bow in January, 1886, while others claimed that he came there in the latter part of the previous year. Provincher himself was not called as a witness. The evidence, therefore, upon the question of his residence was not as satisfactory as might be desired, but, taking the testimony as we find it, we cannot say that there was not sufficient to sustain the finding, and it will not be disturbed.

It is objected that the finding that John Wiles, who voted for respondent, was a resident of the village of Broken Bow, and a qualified voter on the day of election, is not sustained by the testimony. Although there was an effort made to establish the fact that Wiles resided with his brother, a few miles from town, yet we think it may be said that upon this question there was virtually no conflict, the decided weight of the testimony being in favor of the residence of Wiles within the corporate limits of Broken Bow, and that he was a legal voter.

A large portion of the testimony is devoted to the question of the residence of Edmund S. Cutler. It appears that Cutler resided on what is known as block 31, in the original town of Broken Bow; that in June, 1883, the owner of the town site procured the vacation of blocks 30, 31, and 32, together with the streets and alleys connected therewith. This was prior to the incorporation of the village, which occurred in 1885. The record shows that the territory included in the corporation of the village of Broken Bow, at the time the same was made, included all of the original town plat of Broken Bow, and its various additions, which included the blocks in question, and which were ever after treated as a part of the incorporated village. Taxes have been levied upon the property included within the blocks named, and paid, and it does not appear that the authority of the municipality over the territory has ever been questioned, or the rights of the residents as citizens of the incorporated village disputed.

It is next contended that the findings number 22 and 23 are imperfect, because they fail to state whether the number of votes received by each of said parties, respectively, included the votes of Preston, Shaul, and others, whose votes have been attacked. This objection is no doubt well taken, and were this a motion to re-refer the case to the referee, in order that his findings upon the question suggested might be made more perfect, it would

doubtless have to be sustained, but, as we have already
seen, the objection cannot be heard upon a final submis-
sion on the report of the referee, no further discussion
is deemed to be necessary.    If the 22d and 23d findings.
excluded the illegal votes cast at the election, respondent
was legally elected.    If not, he would still be elected, as.
we find two illegal votes cast, of which relator received one,.
and respondent the other.

The relator having failed to establish his case, the writ
must be denied and his petition dismissed, which is.
done.

JUDGMENT ACCORDINGLY.

THE other judges concur.