SCHOOL DISTRICT NUMBER ONE OF HARLAN COUNTY
v. HARRY O. BISHOP ET AL.

FILED JANUARY 21, 1896.    No. 5975.

1. **Findings of Referee:** REVIEW. Findings of fact reported by a referee stand in the same position as the verdict of a jury; and in reviewing the action of a district court in setting aside such a report, the same rules will be observed as in reviewing an order setting aside a verdict.

2. **Ruling on Motion for New Trial:** REVIEW. The granting of a new trial is largely within the discretion of the trial court. A stronger showing is required to reverse an order allowing a new trial than to reverse one denying it.

3. **Reference:** FINDINGS: ORDER SETTING ASIDE REPORT: REVIEW. Where an action at law has been referred, this court will not reverse an order of the trial court setting aside the referee's report and allowing a new trial, when the referee failed to report any finding on material issues presented by the pleadings.

4. **Court Records:** CORRECTIONS. A court of record has the inherent authority to amend its records so as to make them conform to the facts. This power extends as well to supplying omissions as to correcting mistakes, and in the exercise of the power the court is not confined to an examination of the judge's minutes or other written evidence; it may proceed upon any satisfactory evidence.

5. **Continuance:** DISMISSAL: REVIEW: BILL OF EXCEPTIONS. A record disclosing a stipulation for the continuance of a cause and a peremptory order of the court dismissing it at the same term, the judgment of dismissal cannot be reviewed in the absence of a bill of exceptions or matter of record disclosing the grounds of the court's action.

ERROR from the district court of Harlan county. Tried below before GASLIN, J.

*James McNeny,* for plaintiff in error.

*C. C. Flansburg, contra.*

IRVINE, C.

The history of this case has been somewhat eventful, and its result is to present to us now for review questions of practice rather than questions of substantive law. The action was begun by the school district to recover damages upon a bond alleged to have been executed by Henry O. Bishop as principal and the other defendants as sureties, conditioned for the faithful performance of a contract whereby Bishop undertook to construct for the school district a certain schoolhouse, it being alleged that the contract provided that Bishop should assume all risk of losses by fire, water, or accident during the progress of the work, and deliver to the school district the building complete at a time specified. The breach alleged was that while the work was in progress a violent wind-storm occurred, destroying the building, and that Bishop had failed and refused to replace it, to the plaintiff's damage. An answer and a reply were filed presenting a number of issues for trial. In June, 1888, an order was made referring the case to a referee to hear and determine the facts and report his findings on the first day of the following term of court. It does not appear whether or not this order of reference was made by consent of the parties, but no exception was taken thereto; so the question is immaterial so far as the validity of the order is concerned. Subsequently an order was made extending the time for report. This order was made October 16, 1888, and directed the referee to report on the first day of the next term of court. The record presents some question as to whether the report was filed within time. It was filed December 27, 1888, and the record being silent as to the dates when the different terms were held, it must be presumed that the report was filed

within time.   The result of the report so filed  was to find
due to the plaintiff from all the defendants except Henri-
etta Bishop the sum of $4,160.49, and to discharge the
defendant Henrietta Bishop.   A motion was filed to con-
firm this report on the part of the plaintiff, while the de-
fendants filed exceptions thereto, and a motion to set it
aside and for a new trial.   The latter motion was sustained
February  16, 1889, the plaintiff excepting to the court's
ruling.   The case was then continued from term to term
for different reasons until October, 1891.   In that month
there was filed a stipulation of counsel agreeing to a con-
tinuance of the cause over the November, 1891, term; but
an order appears at that term reciting that the cause came
on to be heard and that it was dismissed at plaintiff's costs
over an exception by the plaintiff to that ruling.   Six days
later a motion was filed by the plaintiff to reinstate the
cause; but no entry was made at that term of any order on
the motion to reinstate.   In February, 1892, another judge
presiding, the motion to reinstate was called up, whereupon
the court on motion of two of the defendants entered a
*nunc pro tunc* order, finding that on the 5th day of Decem-
ber, 1891, the motion to reinstate had by the former judge
been overruled and that the plaintiff had then excepted to
that ruling, and directing the clerk to reform the record ac-
cordingly.   Bills of exceptions were settled preserving the
evidence on the hearing of February, 1892; but there is
no bill of exceptions disclosing the evidence or proceedings'
of the November term, 1891.   On this record the plaintiff
prosecutes proceedings in error, his petition containing a
number of assignments of error, which may, however, be
reduced to three general assignments: First, the setting
aside of the referee's report; second, the dismissal of the
case in December, 1891; third, the making of the order of
February, 1892, *nunc pro tunc*, showing the overruling of
the motion to reinstate in December, 1891.

An examination of the Code of Civil Procedure, and of

the decisions of this court thereunder, shows that where a
case is referred, the findings of fact by the referee stand in
the same position as the verdict of a jury, and may be con-
firmed and judgment entered thereon, or may be set aside
on a motion for a new trial in conformity with the practice
in other cases. (Code of Civil Procedure, art. 4 and art. 6;
*Simpson v. Gregg,* 5 Neb., 237; *Light v. Kennard,* 11 Neb.,
129; *Brown v. O'Brien,* 4 Neb., 195.)   Therefore, in con-
sidering whether or not there was error in the action of the
district court in setting aside the referee's report, we should
proceed in the same manner as if there had been a trial by
jury and verdict similar to the report of the referee, and a
motion for a new trial sustained.   While the limitations
upon the power of this court to review the action of a dis-
trict court in granting a new trial have not yet been very
distinctly defined, the adjudications have gone far enough to
establish these rules : That in granting a new trial a district
court has a large discretionary power; it is not confined to
a strict consideration of the specific grounds urged in the
motion, but may, for manifest error in the proceedings, of
its own motion, in the interest of a proper administration of
justice, set aside a verdict and allow a new trial; and, there-
fore, where a new trial has been allowed, a much stronger
showing must be made against the ruling of the court to
procure a reversal, than where a new trial has been denied.
The action of the court will not be reviewed except for
abuse of discretion. (*Missouri P. R. Co. v. Hays,* 15 Neb.,
224; *Bigler v. Baker,* 40 Neb., 325; *Weber v. Kirkendall,*
44 Neb., 766.)   Examining this record with a view to the
rule so established, and not merely upon a technical con-
sideration of the reasons assigned in the motion for a new
trial, we find that the sureties on the building bond averred
in their answer that after the building had been blown
down the plaintiff had permitted strangers to remove and
convert to their own use building material to the value of
$2,500; that they had signed the bond upon condition that

before its delivery one Mullalley should sign the same, and that this condition was known to the plaintiff, and that after the execution of the bond material changes had been made in the building contract, the performance of which it had been given to secure, without the consent of the sureties. The last defense is averred in general language, but is probably sufficiently pleaded unless attacked by motion, which was not done. On none of these issues did the referee make any finding, and there was no general finding. It has been said that where the referee fails to find certain issues the proper practice is to refer the case back with directions to make a finding. (*State v. Graham*, 23 Neb., 68.) But this was said in an original action in the nature of *quo warranto* in this court, and not in a case like this—an ordinary action at law. It has also, we believe, been the practice, where an equity case has been referred and the findings of the referee vacated, for the court itself to make findings on the evidence reported by the referee; and this practice we do not wish to be understood as disapproving. The case before us is, however, an action at law where a jury trial is demandable of right. It could not be referred except by consent of the parties (Code of Civil Procedure, secs. 298, 299), and the record showing no objection, consent is presumed. (*Hosford v. Stone*, 6 Neb., 378.) But the case being one not referable except by consent, if the court did not find the report such as to warrant the entry of judgment thereon, we do not think it was any abuse of discretion to set it aside absolutely and award a new trial, although we would not say that that was the only proper practice. It is stated in one of the briefs that the report was in fact set aside because the bill of exceptions was not complete. This statement is not, however, borne out by the record, which shows that it was set aside "for the reasons stated" in the motion, which included most of the causes authorized for a motion for a new trial. We cannot, therefore, from the record, tell upon which one the

court proceeded, and having found one reason justifying its action it will not be disturbed.

We are thus brought to the proceedings of 1891 and 1892. It is strenuously argued that the *nunc pro tunc* order was erroneous, not because it was not entered in accordance with the facts, but because it was made on oral testimony alone, without any support from the judge's minutes, the files, or other entries of record ; and cases are cited which hold that a *nunc pro tunc* order for the purpose of supplying the record must be based on some entry and cannot be made to depend upon oral testimony. We think that the weight of authority is now contrary to this view; and that the action of the court was fully warranted by our own decisions. In *Garrison v. People*, 6 Neb., 274, a criminal case, the record failed to show the finding of the indictment, and at a subsequent term of the court a *nunc pro tunc* order was entered supplying this defect. This action was sustained, the court holding that a court of record has authority to make an entry as of the date when it should have been made, to conform to the facts; and that "this may be done upon the judge's notes or any other satisfactory evidence." In *Sullivan Savings Institution v. Clark*, 12 Neb., 578, it was held that the judge's minutes are *prima facie* evidence of the proceedings, but may be shown to differ from the judgment actually rendered. *Brownlee v. Davidson*, 28 Neb., 785, and *Hoagland v. Way*, 35 Neb., 387, also assert the full power of the court to amend its record to conform to the facts. Of the propriety of this rule we have not the slightest doubt. The record when made up imports absolute verity. In collateral proceedings and for purposes of review in this court, it is unimpeachable. This is an elementary rule which we have had frequent occasion to enforce. Its existence is of itself a sufficient reason for sustaining the power of the court making the record to see that it becomes in fact what it is in law—an absolutely truthful record of what in fact oc-

curred; and while a court should on application to correct the record proceed with caution for the purpose of insuring verity, it is not confined to any one class of evidence, but, in the language of the first case cited, may proceed upon any satisfactory evidence. There was, therefore, no error in making the *nunc pro tunc* order. Nor can we say that there was error in the judgment of dismissal or in refusing to reinstate the case thereafter. We do not know from the record why the court took this course. It is true there was a stipulation for a continuance, but this stipulation may have been waived. It may have been vacated for good cause. (*McClure v. Heirs of Sheek,* 4 S. W. Rep. [Tex.], 552.) We have no bill of exceptions showing either the existence or absence of such cause. It is true that there is in the record a bill of exceptions embodying the evidence on the motion to reinstate when called up in February, 1892; but this motion was then properly overruled by the judge on ascertaining that the same motion had been passed upon at a former term—in other words, that it was no longer pending. We are not even prepared to say that the rights of other litigants may not justify a court in summarily dismissing a case for want of prosecution, in spite of such a stipulation, where it has stood term after term upon the docket without progressive action and an impediment to other business of the court. But we do not hold that this was such a case. We sustain the judgment of dismissal upon the ground that the record does not disclose the evidence upon which it was based, and error does not appear.

JUDGMENT AFFIRMED.

RAGAN, C., not sitting.