IN RE APPLICATION OF C. F. FISHER, EXECUTOR OF THE ESTATE OF MARTIN SCHULZ, DECEASED, FOR LICENSE TO SELL REAL ESTATE.

C. F. FISHER, EXECUTOR, APPELLEE, v. WARD W. MINOR, GUARDIAN AD LITEM, ET AL., APPELLEES, LOUIS E. YANDA, APPELLANT.

66 N. W. 2d 557

Filed November 5, 1954. No. 33576.

*Moller R. Johnson,* for appellant.

*Clark J. Mingus, DeWayne Wolf,* and *Barlow Nye,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action growing out of the sale of real estate by an executor for the purpose of paying the debts of the decedent. After the executor's sale of the real estate had been confirmed, the purchaser refused to pay in the balance of his bid amounting to $15,074.50. The executor applied for an order requiring the pur-

chaser to pay in the amount, or, in the alternative, for a judgment for the amount. The trial court found for the executor and entered judgment against the purchaser for $15,074.50 with interest at 6 percent per annum from December 23, 1953, and the costs of suit. The purchaser appeals.

C. F. Fisher was appointed and qualified as executor of the estate of Martin Schulz, deceased. On May 6, 1952, the executor petitioned the district court for a license to sell certain described real estate to pay the debts of the estate. An order to show cause was issued on the same day and duly published in a legal newspaper. The license to sell was issued, after hearing, on June 13, 1952. Notice of sale was duly given and the land sold to Louis E. Yanda on July 28, 1952, for the sum of $20,174.50. He paid down $5,100 on the day of the sale. On September 5, 1952, the sale was confirmed by the district court.

Subsequent to the confirmation of the sale the purchaser refused to pay the balance of his bid. The executor applied for an order requiring the purchaser to pay in the balance of his bid, or for a judgment for such amount. In resisting the application, the purchaser contended (1) that the trial court had no jurisdiction to order the sale upon the petition filed, (2) that the sale was void because the executor did not take an oath or file the same as required by section 30-1122, R. R. S. 1943, (3) that the abstract of title to the real estate did not show a merchantable title, and (4) that the executor filed a motion to vacate the sale and agreed to return the cash payment of $5,100, which he failed to do. We shall dispose of these contentions in their numerical order.

Appellant contends that the district court did not have jurisdiction to order an executor's sale to pay the debts of the estate. The issue thus raised is based on a statement that the petition praying for a license to sell did not correctly recite the facts and that there was,

in fact, sufficient personal property in the estate to pay all claims allowed. The petition alleged that claims allowed against the estate amounted to $291.26, exclusive of court costs, executor's and attorney's fees. The amount alleged to be required to pay all provable debts and expenses was $3,085.26. It was also alleged that the funeral expenses in the amount of $630 were paid by the widow and that she was entitled to have it repaid to her from the assets of the estate. The executor also alleged that no personal estate came into his hands and that it was necessary to sell the described real estate to pay the debts and expenses. The trial court examined the county court files dealing with the administration of the estate and took evidence with reference thereto. A license to sell was granted, the land was sold, and the sale confirmed. No appeal was taken at any stage of the foregoing proceedings.

The evidence shows that the petition filed to obtain the license to sell did not correctly recite the facts. The executor admits that he had a $500 note and two $100 government bonds in his possession at the time the petition was filed, which were not included in his calculations. He states that he overlooked the bonds and that he did not consider the note collectible at the time he verified the petition. After the license was granted he collected $752.43 for wheat which he credited to the wife's account, she being an incompetent person and the executor being her regularly appointed guardian. He also collected the note. There is evidence in the case at bar that debts, taxes, and expenses remaining to be paid amounted to the sum of $4,236. The executor testifies that he had received total receipts in the sum of $3,997.30. He paid claims in the amount of $2,901.02 out of this amount which are not included in the $4,236 heretofore mentioned. Even if the two $100 bonds, the $500 note, and the $752.43 for wheat were added to the personal assets in the hands of the executor, debts and expenses would exceed personal assets

in the hands of the executor by more than $1,600.

The petition for the license to sell real estate for the payment of debts and expenses stated a cause of action within the exclusive jurisdiction of the district court. While it is true that there was error in the amounts therein recited, the district court held a hearing and concluded from the evidence that the land must be sold to pay debts and expenses. This is a determination of the sufficiency of the pleadings and evidence to sustain the granting of the license to sell, and is not subject to a collateral attack in the absence of fraud or collusion.

The controlling rule is set forth in Trumble v. Williams, 18 Neb. 144, 24 N. W. 716, as follows: "The petition, in our view, states sufficient to authorize the court to issue the license; but even if it did not, and the court would so hold in a direct proceeding to set it aside, yet, where it has been acted upon as sufficient by the court having exclusive original jurisdiction of the subject matter, it will be sustained in this court when collaterally attacked where there was no collusion and fraud. The authority to grant a license to sell real estate carries with it the implied power to determine the necessity for such sale, and the sufficiency of the pleadings presented to the court for that purpose, and where it has jurisdiction its orders and judgments are valid until set aside." See, also, Haight v. Hayes, 3 Neb. (Unoff.) 587, 92 N. W. 297.

We conclude that the order of the court granting a license to the executor to sell real estate is not subject to a collateral attack. The evidence in the case at bar showing that the debts and expenses exceeded the personal assets is not material in determining the jurisdiction of the court in granting the license. While collusion and fraud were not pleaded, and they are not therefore issues here, the evidence adduced dissipates any question of fraud or collusion and confirms the court's finding that it was necessary that a licene to sell real

estate for the payment of debts be granted to the executor.

It is next contended that the sale was void because the executor did not take an oath or file the same as required by section 30-1122, R. R. S. 1943. The record discloses that it was discovered after the sale was confirmed on September 5, 1952, that there was no oath of the executor in the files and the appearance docket did not indicate that one had been filed. On November 20, 1952, the executor filed a motion for an order nunc pro tunc showing that the executor did in fact take an oath and filed it in the office of the clerk of the district court on June 22, 1952. A hearing was had on the motion and evidence taken. Upon the evidence adduced, the trial court granted the order.

The evidence in support of the nunc pro tunc order is substantially as follows: The attorney for the executor testified that on June 14, 1952, the day following the granting of the license to sell, the executor signed an oath in duplicate which was sworn to before such attorney in his capacity as a notary public. He further testified that on June 22, 1952, he filed the executor's bond and oath with the clerk of the district court. The bond was actually filed on June 23, 1952, but for some reason the oath was not in the files nor shown to have been filed. The testimony of the attorney was positive that the oath was delivered to the clerk with the bond for the purpose of having it filed. This evidence is not disputed. Such evidence is sufficient to sustain a nunc pro tunc order. It is proper for a court to make an entry nunc pro tunc in order to correct its records so that they shall speak the truth. This power exists notwithstanding the fact that the rights of third persons may be affected. The power may not be used to correct errors resulting from negligence or failure to comply with procedural or jurisdictional requirements. The court may amend its records only to make them correspond with the facts. Garrison v. The People, 6 Neb.

274. The order nunc pro tunc may be supported by the judge's notes, court files, or other entries of record. It may also be based upon other evidence, oral or written, which is sufficient to satisfy the court that the order is required to make the record reflect the truth. School Dist. v. Bishop, 46 Neb. 850, 65 N. W. 902. The evidence was sufficient to sustain the finding of the court that a nunc pro tunc order was required. The trial court believed the evidence and we find no reason in the record to interfere with its finding.

It is further contended that the abstract of title to the real estate sold pursuant to the license to sell did not show a merchantable title. There is evidence in the record of a general nature that the executor through his attorney guaranteed the title at the time of the executor's sale. This evidence is positively and unequivocally disputed. If the question turned on a question of fact, we would be compelled to say that the finding of the trial court with reference thereto was sustained by competent evidence. We have many times said that this court will, in determining the weight of the evidence where it is in irreconcilable conflict on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying. In any event, the executor's sale is a judicial one. The purchaser buys at his peril insofar as the title to the real estate sold is concerned. The purchaser may insist upon a valid sale as distinguished from an irregular one. Neither the court nor the executor is authorized to guarantee a merchantable title. The doctrine of caveat emptor applies to the purchaser. This court has held: The doctrine of caveat emptor applies to all judicial sales, subject to the qualification that the purchaser is entitled to relief on the ground of after-discovered mistake of material facts or fraud, where he is free from negligence. He is bound to examine the title and not rely upon statements made by the officer conducting the sale as to its condition. If he buys without such examination he does so at his

peril, and must suffer the loss occasioned by his neglect. Norton v. Nebraska Loan & Trust Co., 35 Neb. 466, 53 N. W. 481; Prudential Ins. Co. v. Diefenbaugh, 129 Neb. 59, 260 N. W. 689; Enquist v. Enquist, 146 Neb. 708, 21 N. W. 2d 404.

It appears that the executor moved to have the sale vacated. The purchaser contends that the executor promised to return the down payment, which he refused to do. The vacation of the sale or its confirmation is a judicial matter within the sole control of the court. The executor has no authority to relieve a purchaser from a bid made at an executor's sale authorized by the court. His rights with reference thereto are legal rights which only the court has authority to adjudicate.

It appears clear to us that the executor's sale met all the requirements of section 30-1142, R. R. S. 1943, a curative statute applicable to the present proceeding. The executor was licensed to make the sale by the district court having jurisdiction. A bond was filed in the amount specified by the court. The executor took an oath and filed it as required. Proper notice was given of the time and place of sale. The premises were sold in accordance with the notice and the sale was confirmed by the court. The essential requirements of the applicable statutes have been met and the proceeding is not vulnerable to collateral attack because of irregularities. Pohlenz v. Panko, 106 Neb. 156, 182 N. W. 972; Haight v. Hayes, *supra*.

The judgment of the district court is correct and it is affirmed.

AFFIRMED.