IN RE APPLICATION OF MATTHEW LEO MCKEONE, SR.
WATSON BROS. TRANSPORTATION CO., INC., ET AL.,
APPELLANTS, V. RED BALL TRANSFER COMPANY
ET AL., APPELLEES.

67 N. W. 2d 475

Filed December 17, 1954.   No. 33480.

*Jack W. Marer, Samuel V. Cooper,* and *Kaplan & Zacharia,* for appellants.

*Viren, Emmert & Hilmes,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This proceeding challenges the validity of a nunc pro tunc order of the Nebraska State Railway Commission. The commission sustained the validity of the order. The petitioners appeal. We affirm the order of the commission.

Petitioners are Watson Bros. Transportation Co., Inc. and Union Transfer Company. Both petitioners are corporations. For convenience, they will be hereinafter referred to as the plaintiffs. The holder of the operating authority involved is the Red Ball Transfer Co., originally in single ownership and now a copartnership. For convenience, it will hereinafter be referred to as the defendant. The Nebraska State Railway Commission will be hereinafter referred to as the commission.

On November 24, 1937, the defendant was issued a certificate of public convenience and necessity under the so-called grandfather clause of the Motor Carrier Act. Laws 1937, c. 142, § 7, p. 531. That certificate authorized irregular route operations "From Omaha, Lincoln, Hastings and Grand Island, Nebraska to and from various points in the State of Nebraska at large."

The record shows that the defendant at the time of the issuance of the certificate was owned and operated by Matthew Leo McKeone, Sr. On June 19, 1945, he made application for a transfer of his certificate to a partnership consisting of himself and his sons. On June

22, 1945, the commission granted the application, cancelled and revoked the original certificate, and granted a new certificate of public convenience and necessity. It did not change the authorized irregular route operations.

On June 12, 1952, the defendant filed its petition praying for "a nunc pro tunc order clarifying and correcting the irregular route operating authority presently issued to applicant * * * to read as follows: Irregular Route Operations: To and from points and places in the State of Nebraska at large."

On June 14, 1952, the commission, without giving notice or public hearing, entered its order amending the certificate of convenience and necessity so as to authorize irregular route operations "Between points and places within the State of Nebraska at large."

Plaintiffs then on December 18, 1952, filed their petition praying that the nunc pro tunc order of June 14, 1952, be cancelled and revoked or, in the alternative, set for a public hearing. They alleged that they were holding intrastate authorities granted by the commission and were continuously engaged in transporting commodities in Nebraska. These allegations the defendant admitted by answer.

Plaintiffs alleged that the issuance of the nunc pro tunc order provided for the enlargement, extension, and expansion of the authority of defendant; that it was acted upon without notice and entered without a hearing; and that they first became aware of the order on December 11, 1952. Defendant by answer admitted the application for and issuance of the nunc pro tunc order and denied otherwise.

Plaintiffs then made a series of allegations which may be summarized and reduced to the contentions that the commission was without jurisdiction to enter the nunc pro tunc order; that the matter was handled ex parte; that there was no notice and no hearing on the application; and that defendant was guilty of laches. De-

fendant joined issue by a general denial in effect of these allegations.

The commission heard the matter on February 23, 1953, at which evidence, mostly documentary, was introduced.

The commission on April 14, 1953, found that the issues raised by the petition here involved were made moot by a commission order of December 2, 1952, which was served upon the plaintiffs and others on January 30, 1953. This order was entered in a proceeding whereby the acquisition by the defendant of operating rights and authority of Glen and Irene Swedell were approved, and a consolidated certificate of convenience and necessity was issued to defendant which authorized irregular route operations "between points and places within the State of Nebraska at large." The order shows that these plaintiffs appeared as interveners in opposition in that matter.

The commission found that the petition here involved should be dismissed, and so ordered.

Plaintiffs then moved for reversal, modification, vacation, or rehearing of that order, asserting among other things that the commission had not passed upon the issues presented by the pleadings and the evidence.

Thereafter, on July 28, 1953, the commission heard the matter. It found that the order entered nunc pro tunc was in all respects valid and proper and all notices required by law were given; that the order of December 2, 1952, was decisive of the issues herein; and denied the motion.

The plaintiffs attacking the order here contend that the order was not a nunc pro tunc order. They contend that it was one enlarging and broadening the authority originally granted; that it was in effect the granting of a new and different authority and as such required defendant to meet the conditions provided by statute; and that it was one which required the giving of notice and a public hearing as provided by statute.

The question, then, is: Was this a nunc pro tunc order or was it one granting a new certificate of authority?

It is the rule that: "Courts should review or interfere with administrative and legislative action of the Nebraska State Railway Commission only so far as it is necessary to keep it within its jurisdiction and protect legal and constitutional rights." In re Application of Meyer, 150 Neb. 455, 34 N. W. 2d 904.

The rules relating to nunc pro tunc orders are generally applicable to administrative and quasi-judicial commissions. Frankfort Ky. Nat. Gas Co. v. City of Frankfort, 276 Ky. 199, 123 S. W. 2d 270. We have so applied them.

In North Loup River P. P. & I. Dist. v. Loup River P. P. Dist., 149 Neb. 823, 32 N. W. 2d 869, we stated the rules as follows: " 'If a judgment in fact was rendered, if an order in fact was made, and such judgment or order not recorded, then the court, at any time afterwards, in a proper proceeding and upon a proper showing, is invested with the power to render nunc pro tunc such judgment or make such order.' "

" 'It must be borne in mind that the proper function of a nunc pro tunc order is not for the purpose of correcting some affirmative action of the court which ought to have been taken, but its true purpose is to correct the record which has been made, so that it will truly record the action really had, but which through some inadvertence or mistake has not been truly recorded. In other words, it is an order to make the record speak the truth.' "

"We have also held that such a judgment must conform to and be no broader in its terms than the judgment actually rendered."

The last rule just quoted is taken from the body of the opinion. As stated in the syllabus points, it is: "Such a judgment must conform to and be no broader in its terms than the judgment actually entered."

The use of the phrases "actually rendered" in the opinion and "actually entered" in the syllabus was an unfortunate choice of words. The opinion cites Phelps v. Wolff, 74 Neb. 44, 103 N. W. 1062. The language there used states the correct rule: "A nunc pro tunc judgment must conform to and be no broader in its terms than the one originally rendered," meaning the one originally determined and made but not entered.

We have also held: "The order nunc pro tunc may be supported by the judge's notes, court files, or other entries of record. It may also be based upon other evidence, oral or written, which is sufficient to satisfy the court that the order is required to make the record reflect the truth." Fisher v. Minor, *ante* p. 247, 66 N. W. 2d 557.

We review the order subject to the following established rule: "On appeal to the Supreme Court from an order of the Nebraska State Railway Commission, while acting within its jurisdiction, the question for determination is the sufficiency of the evidence to prove that the order is not unreasonable or arbitrary." In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603.

What, then, is the evidence upon which the challenged order was based?

Defendant's application for a certificate under the grandfather clause is in evidence. As to its irregular route operations as of April 1, 1936, it is stated that it obtained the main volume of its traffic in Omaha, Lincoln, Hastings, and Grand Island and that that traffic was transported to "All points within the state." Following that, in answer to a requirement to "describe operations clearly and in detail," applicant answered: "Since 1914, applicant has held himself out for general hauling, * * * from and to all points within the said state of Nebraska." The evidence taken at the hearing on the application under the grandfather clause before the examiner for the commission is shown. The witness for defendant was asked to state "briefly what the gen-

eral nature of the operations intrastate are." He outlined the regular routes, followed by: "And irregular routes for the entire State of Nebraska." The witness then in answer to questions described more in detail the regular route operations and a "somewhat irregular" regular route from Lincoln to Beatrice. The witness was then asked (with reference to irregular route operations) from where the "main volume of traffic" was obtained. The answer was Omaha, Lincoln, Hastings, and Grand Island and that from those points traffic was transported to and from various points in the state. These answers obviously relate to the "main volume of traffic." It does not appear that the witness was asked as to irregular route traffic not in the "main volume" class. The witness was then asked if an exhibit was a fair cross section of the irregular route operations. The witness answered "No." The exhibit shows nine shipments either from Omaha, to Omaha, or from Hastings. The transcript of the hearing then shows "the applicant produced his files or manifest sheets showing movements of commodities generally, * * * by days, during the year 1936 up to April 1, 1936, and to and from various points in the state of Nebraska at large."

At the conclusion of the hearing the examiner stated: "My recommendation will be to the Commission that a certificate of public convenience and necessity be granted to your company in operations the same as you have related under your regular and irregular route operations."

The examiner's report to the commission dated November 6, 1937, is in the record. It recites findings as to irregular routes that the defendant obtained its main volume of traffic from Omaha, Lincoln, Hastings, and Grand Island; that he transported his main volume of traffic to and from various points in the state of Nebraska at large; and that "on and since April 1, 1936, said applicant has operated to and from various points in the state of Nebraska at large." He recommended

an order in accordance with the above findings. The record shows a signed approval of this report by Commissioners Bollen and Good.

The commission met on November 16, 1937. Its records recite that "Examiners' reports having been approved by the Commission" it was moved that the "following form M-1 applications be granted as common carriers, * * *." In a list of over 200 applications appears that of Matthew Leo McKeone, Omaha.

Thereafter, the commission on November 24, 1937, issued the formal certificate to defendant. This was over the signature of the chairman and secretary. It recited a finding that "the report of Examiner having been approved and concurred in" that applicant was entitled to a certificate and. "An appropriate order will be entered." The order follows and, as to irregular route operations, it authorized service "From Omaha, Lincoln, Hastings and Grand Island, Nebraska to and from various points in the State of Nebraska at large."

The commission, in its findings in the order of April 14, 1953, dismissing the petition of plaintiffs, stated: "Thereafter on November 24, 1937, the Commission entered its order approving the Report and Recommendation of the examiner which, according to the practice then followed, constituted the order of the Commission and a certificate of even date * * * was issued over the signature of the Chairman of the Commission."

Defendant attached to its application for the nunc pro tunc order the affidavit of Mr. McKeone, Sr. In Harris v. Jennings, 64 Neb. 80, 89 N. W. 625, 97 Am. S. R. 635, we accepted affidavits as evidence to sustain a nunc pro tunc order. In that affidavit, he affirmed that since "1925 he had always held himself out to and actually physically conducted operations over irregular routes to and from all points in the State of Nebraska when called upon to do so"; that prior to April 1, 1936, "he conducted operations in the transportation of general commodities * * *, to and from various points all over

the entire State of Nebraska"; he recited such "extensive operations to and from various points over the entire state" during the years 1932 to 1935, inclusive; he affirmed that he was a witness before the examiner in 1937 and there produced evidence supporting the finding of the examiner and that since that time he and the succeeding partnership had continued to transport commodities between all points in Nebraska on an irregular route basis and was presently doing so; and that only "recently" was the discovery made that the operating authority as written did not include operations to and from all points in Nebraska.

Such, then, is the evidence which the commission had before it when it entered the nunc pro tunc order. The evidence is sufficient to bring the order within the rules defining the scope of a nunc pro tunc order. The evidence is sufficient to show that the order was not unreasonable nor arbitrary.

Plaintiffs further contend that defendant slept upon its rights and remained silent for nearly 15 years, and is guilty of laches and a right to relief is barred. Assuming, but not deciding, that laches is a doctrine applicable within the powers of the commission, we find no merit in the contention.

The passage of approximately 15 years between the entry of the two orders here involved is certain. Laches is an equitable doctrine. Laches does not grow out of the mere passage of time. Miller v. Miller, 153 Neb. 890, 46 N. W. 2d 618.

Plaintiffs assert that no charge is made that they in any manner induced or caused the defendant to remain silent and to sleep upon its rights. That appears to be correct. Plaintiffs further state that no explanation is made nor does one appear in either the petition for the nunc pro tunc order or in the order based thereon revealing why the defendant remained silent for 15 years. The argument here is based upon the premise of unexplained silence. The record is to the contrary. The

petition for the nunc pro tunc order alleged defendant, while operating under the grandfather certificate and the certificate to the partnership, did not realize that the certificates did not cover the transportation of commodities between all points and places in the state at large; that, believing it had that authority, it did operate between all points in Nebraska on an irregular route basis; that it had conducted its operations on that basis; and that only recently it had discovered the certificates did not properly recite the authority to which it was entitled, and hence the petition for a nunc pro tunc order. These allegations are referred to by the commission in its findings in the nunc pro tunc order. Plaintiffs overlook, likewise, the affidavit of Mr. McKeone, referred to above herein, made in support of that explanation. It is attached to the petition and was received in evidence in this proceeding.

In Baxter v. National Mtg. Loan Co., 128 Neb. 537, 259 N. W. 630, we held: "Where the petition of a plaintiff who has slumbered long upon his rights shows apparent laches on its face, the suitor must generally account for and excuse his delay by proper allegations in his pleading, and must support such allegations by proof."

Defendant here complied with that requirement.

Concluding as we do that the attack upon the nunc pro tunc order as such is without merit, we do not explore nor decide the effect of the consolidation order of December 2, 1952, upon which the commission also relied in holding that the issue presented was moot.

The order of the commission is affirmed.

AFFIRMED.