ANN LOCKARD, APPELLANT, v. HUBERT LOCKARD, APPELLEE.

97 N. W. 2d 1

Filed November 6, 1959. No. 34609.

*Victoria & Sloma,* for appellant.

*Richling & Shrout,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This was originally an action for separate maintenance instituted by Ann Lockard, plaintiff and appellant, against Hubert Lockard, defendant and appellee. In her petition, which was filed March 11, 1957, the plaintiff alleged generally as grounds for the action that the defendant was guilty of cruelty. In the petition the plaintiff asked that she be awarded the custody of a minor child of the parties.

To the petition the defendant, on April 15, 1957, filed an answer which contained a general denial of the allegations of cruelty contained in the petition. He also filed a cross-petition in which he charged that plaintiff had been guilty of cruelty. His prayer was for absolute divorce and for custody of the minor child.

A trial was had on the issues made by these pleadings on July 1 and 2, 1958, as is shown by a photostatic copy of entries made on the trial docket, which appears in the transcript. Nothing of importance appears beyond an entry of July 1, showing that evidence of the plaintiff was taken and another showing that further evidence of plaintiff was taken on July 2. There is no statement the effect of which was to indicate that the

trial had been concluded or that a decision had been made or announced.

Appended as a separate part of the transcript was a document separately certified by the clerk of the district court as a true photostatic copy of the judge's notes "entered as an Exhibit in said cause." There is nothing in the record as to how it became an exhibit. It does not appear in the bill of exceptions and it is not by reference made a part of any pleading or order or the decree of the court. The significance of this will appear later herein.

On the trial the plaintiff and two witnesses gave testimony with regard to conduct of the defendant. This testimony on its face was sufficient as proof to sustain a decree of divorce in her favor on the ground of cruelty. Neither party questions this on this appeal.

On the second day of the trial, as disclosed by the bill of exceptions, a recess was taken. Following the recess the attorney for the plaintiff made an announcement which is in part a follows: "With permission of the Court and approval of the Court and by the agreement of the parties and counsel representing the parties, we have been able to come (to) an agreement concerning this matter and settlement whereby:

"1. With the Court's approval an absolute divorce will be granted to the plaintiff."

The remaining portion of the announcement contains the details of the agreement as to division of property, alimony, custody of the minor child, costs, expenses, and attorneys' fees. These details are not important at this point in the opinion.

Following the pronouncement there were interchanges relative to incidents involved in the proposed settlement among the attorneys and the court which do not require review here. Throughout this there was no announced approval by the court.

Following this the defendant gave testimony relating only to his economic status and his physical condition.

The plaintiff was then recalled to the stand and with reference to the proposed agreement the bill of exceptions contains in pertinent part the following: "Q. And all of these agreements are made with your knowledge and consent, is that correct? A. I will agree to that statement. * * * Q. You understand each and every one of those agreements and arrangements and concessions we have made and the concessions they have made? A. I do. Q. They have all been submitted to you and approved by you and are okay? A. Yes." These were questions propounded to the plaintiff and her answers thereto.

Then on the matter of amendment to the petition to ask for divorce rather than separate maintenance the following questions by the court appear as do answers by the plaintiff as well as an answer to a question to the court contained in an answer made by her: "BY THE COURT: I think the legitimate ends of matrimony are destroyed here. Would you rather have a divorce? A. Yes. BY THE COURT: Then you withdraw your petition. You have asked for separate maintenance but we have come to the point where I am satisfied a divorce must be granted here. I am giving you the privilege to ask now for an absolute divorce by interlineation. A. That isn't the way it was drawn up and that isn't the way I want it, but we still have six months, haven't we? BY THE COURT: Yes." This was the end of the hearing on July 2, 1958. There was no announcement by the court of approval of the agreement and no announcement of any other kind or type of adjudication.

Thereafter, on July 23, 1958, the plaintiff filed an application, to the extent that it is important here, to have the agreement of July 2, 1958, set aside and held for naught, and for permission to adduce further testimony as to the issues in the case. Whether or not there was ever a hearing prior to September 2, 1958, on this application does not appear. From the bill of ex-

ceptions it appears that there was a hearing thereon on September 2, 1958. There however does not appear to have been a ruling upon it. It is added here that, as was true at the hearing in July, no approval of the agreement and no adjudication on the merits of the case was pronounced.

On October 1, 1958, a decree was filed by which the plaintiff was granted a decree of absolute divorce. This decree disposed of the rights and property of the parties in accordance with the terms of the purported agreement of July 2, 1958. It also made provision for the custody, support, and maintenance of the minor child of the parties. The decree contains the following: "The Court further finds that after the plaintiff had rested (on July 2, 1958), the parties presented to the Court a compromise agreement which was represented to the Court has (sic) having been agreed upon by the parties through counsel. In this connection the Court approved said agreement which will be hereinafter more specifically detailed."

It is to be observed that while the decree states that the agreement was approved by the court, without stating any date of approval, it does not contain any declaration that an adjudication had previously been made or announced.

The decree concludes as follows: "Signed Nunc Pro Tunc as of July 2nd, 1958. Dated October 1st, 1958."

A motion for new trial was filed by plaintiff on October 7, 1958. This motion was overruled on February 2, 1959. The plaintiff appealed from the order overruling the motion.

The grounds of the appeal as disclosed by the assignments of error are, in substance: That the decision is contrary to the evidence and to law; that the court erred in refusing to receive further evidence; that the award of alimony and the division of property were inequitable; and that there was irregularity in the proceedings of the court.

By reason of what becomes apparent from the briefs of the parties and the transcript, although the point suggested is not made explicit in either brief, the question for first consideration is that of whether or not this court has any jurisdictional right to entertain the appeal on the merits of the cause of action which was before the district court.

The question is that of whether or not the decree must be treated as having been entered on October 1, 1958, the date it bears, or actually nunc pro tunc as of July 2, 1958. The importance of this is that if it was entered nunc pro tunc as the concluding words indicate no proper jurisdictional steps were taken to bring the case here for review.

A motion for new trial must be made within 10 days after the verdict, report, or decision is rendered except where a party is unavoidably prevented from so doing, or for the cause of newly discovered evidence. See, § 25-1143, R. R. S. 1943; Rumbel v. Ress, 166 Neb. 839, 91 N. W. 2d 36. The question of whether plaintiff was unavoidably prevented from filing a motion for new trial is not here, hence the 10-day provision applies.

A motion for new trial not filed within time cannot form the basis for extension of the time within which an appeal can be taken. See Ehlers v. Neal, 148 Neb. 697, 28 N. W. 2d 558.

It is required by statute that in proceedings to obtain a reversal, vacation, or modification of a judgment, decree, or final order made by the district court, except in criminal actions, a notice of intention to prosecute an appeal shall be filed with the clerk of the district court within 1 month from the date of the rendition of such judgment, decree, or order, or an order overruling a motion for new trial. See, § 25-1912, R. R. S. 1943; Powell v. Van Donselaar, 160 Neb. 21, 68 N. W. 2d 894.

It is necessary that the notice of appeal shall be filed in accordance with the terms of section 25-1912, R. R.

S. 1943, in order to confer jurisdiction upon this court to entertain the appeal. Akins v. Chamberlain, 164 Neb. 428, 82 N. W. 2d 632.

If within the true meaning of the term the decree in this case was entered nunc pro tunc as of July 2, 1958, in the light of what has been pointed out, there is nothing here which this court has jurisdiction to review. There is no motion for new trial which is referable to a final decision on that date, and the notice of appeal was not filed until February 18, 1959.

It should be said here that a formal entry on the records is not essential to the rendition of a judgment. Under the law of this state a judgment is rendered when the court announces its decision upon the law and the facts in controversy as ascertained by the pleadings. See Sloan v. Gibson, 156 Neb. 625, 57 N. W. 2d 167.

With regard to the true office of a nunc pro tunc order this court said in O'Grady v. Volcheck, 148 Neb. 431, 27 N. W. 2d 689:

"The proper function of a nunc pro tunc order is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake has not been truly recorded.

"A nunc pro tunc order is one the design and purpose of which is to make the record speak the truth.

"The purpose of a nunc pro tunc order is not to correct, change, or modify affirmative action previously taken by the court." See, also, Fisher v. Minor, 159 Neb. 247, 66 N. W. 2d 557; Watson Bros. Transp. Co. v. Red Ball Transf. Co., 159 Neb. 448, 67 N. W. 2d 475; Akins v. Chamberlain, *supra*.

Before it may be said therefore that the decree in question here was truly nunc pro tunc as of July 2, 1958, it must be ascertained that there was in fact a rendition of an adjudication on July 2, 1958; that it was the purpose of the court in the decree here to express that which it was the intention to express at that time; and that it does express that intention.

Courts may consider and rely upon any satisfactory evidence to ascertain whether or not an order is properly a nunc pro tunc order. See, Ackerman v. Ackerman, 61 Neb. 72, 84 N. W. 598; Amos v. Eichenberger, 107 Neb. 416, 186 N. W. 330; Fisher v. Minor, *supra;* Watson Bros. Transp. Co. v. Red Ball Transf. Co., *supra.*

Another rule is the following: "In the absence of a bill of exceptions, this court will presume that the judge had before him competent evidence on which to base his findings sustaining the order complained of." Amos v. Eichenberger, *supra.*

In the case here there is no bill of exceptions relating to the question of whether or not there was a rendition on July 2, 1958, of the adjudication contained in the decree dated and filed on October 1, 1958. It must therefore be presumed that the decree was and is properly entered nunc pro tunc as of July 2, 1958. It follows that this court is without jurisdiction to entertain the appeal.

The appeal is accordingly dismissed.

APPEAL DISMISSED.