IN RE APPLICATION OF ALBERT ROY ANDREWS. ALBERT ROY ANDREWS, DOING BUSINESS AS ANDREWS TRANSFER & STORAGE, APPELLANT, v. NEBRASKA STATE RAILWAY COMMISSION, APPELLEE.

135 N. W. 2d 712

Filed June 4, 1965. No. 35911.

Nelson, Harding & Acklie and Richard A. Peterson, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This is an appeal from an order of the Nebraska State Railway Commission denying appellant's petition for an order nunc pro tunc to correct an order and certificate of the commission entered March 31, 1938.

The rather involved history of this proceeding begins about August 24, 1936, when Albert Roy Andrews filed his "grandfather" application to secure a certificate authorizing continuation of his operations as a motor carrier conducted on and since April 1, 1936. Following a hearing before the Nebraska State Railway Commission, an order was entered March 31, 1938, and a certificate was issued authorizing the transportation of commodities generally over "Irregular routes from Madison County, to and from Omaha, and occasionally to and from various points within the State of Nebraska at large." It is the appellant's position that this certificate did not properly reflect the authority authorized by the report of the examiner for the commission, which was approved by the commission; and did not reflect the scope of appellant's operations as they had been conducted on and prior to April 1, 1936. After receiving a copy of his "grandfather" certificate, the appellant believed that confusion might arise as to the proper interpretation of the order and certificate and held a discussion with the director of the Motor Transportation

Department with reference to the matter. The individual with whom he talked said: "Mr. Andrews, your authority says just what you're telling me you're doing. It reflects it. What do you want? Special attention? Or do you want us to give you a special order or authority?" Relying upon those comments, the appellant says he continued to perform nonradial, statewide service, without regard to a base hub or territory. In 1953, the Motor Transportation Department advised the appellant that their opinion was that any shipment handled by the appellant which did not either originate or terminate in Madison County would be outside the scope of his territorial authority. Thereafter, appellant filed a petition for an order nunc pro tunc seeking to correct the order of the commission entered on March 31, 1938, to read: "* * * commodities generally, between points in Nebraska over irregular routes." Through an extended process of hearings, orders, motions, and a prior appeal to this court (dismissed for procedural reasons, and as to which no plea of res judicata is raised in this case), this matter is again before us. The general rules applicable here were stated in Watson Bros. Transportation Co. v. Red Ball Transfer Co., 159 Neb. 448, 67 N. W. 2d 475, quoting from North Loup River P.P. & I. Dist. v. Loup River P.P. Dist., 149 Neb. 823, 32 N. W. 2d 869: "If a judgment in fact was rendered, if an order in fact was made, and such judgment or order not recorded, then the court, at any time afterwards, in a proper proceeding and upon a proper showing, is invested with the power to render nunc pro tunc such judgment or make such order.

"It must be borne in mind that the proper function of a nunc pro tunc order is not for the purpose of correcting some affirmative action of the court which ought to have been taken, but its true purpose is to correct the record which has been made, so that it will truly record the action really had, but which through some inadvertence or mistake has not been truly recorded. In

other words, it is an order to make the record speak the truth.

"We have also held that such a judgment must conform to and be no broader in its terms than the judgment actually rendered."

We must, therefore, turn to the record which appears with respect to the hearing preceding the entry of the order and certificate in 1938. The application showed:

"II. Description of each route regularly operated * * *

1. Between Omaha and Norfolk, as follows:
    (a) From Norfolk to Omaha, via Highway 8 and 30
    (b) From Norfolk to Fremont, via Highway 8
    (c) From Fremont to Omaha, via Highway 30
    (d) From Omaha to Fremont, via Highway 30
    (e) From Fremont to Norfolk, via Highway 8

Show, also, * * *
    (1) Whether all intermediate points were served —Yes (if necessary)
    (2) The off-route points served—None * * *

III. Description of operations over irregular routes * * *

    A. Location of applicant's headquarters—Norfolk, Nebraska.
    B. Where did applicant obtain the main volume of its traffic? * * * Norfolk and vicinity.
    C. To what principal place, places or territory did applicant transport such traffic? * * * All over Nebraska; mostly in eastern half.
    D. If * * * do not adequately and completely describe applicant's operations * * *: We move household goods and fixtures anywhere, any time, by request, as previously noted, merchandise from Omaha, also from Lincoln and Sioux City by request."

By amendment, in a letter filed February 11, 1937, appellant stated: "One type of commodity was inadvertently omitted, it should read: 'We move Household gds,

Fixtures and *genl. mdse.* Anywhere, any time, including pool car distribution, in fact anything, anyplace, anytime.' "

Six affidavits attached to the application show movements of (1) merchandise and household goods to different parts of the state (origin not shown, presumably Norfolk); (2) oxygen and acetylene from Omaha to the Norfolk territory; (3) telephone company supplies and household goods to different parts of the state (origin not shown, presumably Norfolk); (4) merchandise of wholesale fruit company from Omaha to Norfolk and distribution of pool cars at Norfolk; (5) merchandise and household goods to different parts of the state (origin not shown, presumably Norfolk); and (6) merchandise (welding supplies) to the Norfolk territory, including Neligh and Lyons, Nebraska.

There is no transcript of the hearing and the reporter's notes have been lost. The examiner's note sheet and report are in evidence. The examiner's note sheet shows:

"Irregular Route Operations:
(1) Point or territory where main volume of traffic is obtained: Norfolk - Madison County.
(2) Point or territory to which main volume of traffic is transported: Omaha.
(3) Additional points in state to which traffic is transported: State Wide."

The examiner's report and recommendations show:
"From the evidence adduced, the examiner finds:
1. That said applicant was in actual bona fide operations as a common carrier of commodities generally by motor vehicle on April 1st, 1936, over the following irregular routes:
IRREGULAR ROUTE OPERATIONS—
1. That said applicant transports commodities generally * * *
2. That he obtains his main volume of traffic from Madison County * * *.

3. That he transports the main volume of traffic to Omaha * * *.

4. That on and since April 1st, 1936, said applicant has operated to and from various points within the State of Nebraska at large."

The appellant contends that his affidavit filed in support of his present petition, in which he affirmed "that since the year 1920 he has always held himself out to and actually physically conducted operations over irregular routes to and from all points in the State of Nebraska when called upon to do so" establishes that he was in actual bona fide operation on April 1, 1936, to and from all points in the State of Nebraska. We gather that it is appellant's position that a mere holding out to operate to or from any point statewide, and physically conducting some such operations when called upon to do so, without evidence of what operations were actually performed, constituted actual bona fide operation to and from all points statewide; and establishes not only what the order should have been, but a mistake in recording it. Even if there were actual evidence of such operation, where the action really taken by the commission was wrong, it is not the function of an order nunc pro tunc to correct it now.

The proper function of a nunc pro tunc order is not to correct some affirmative action which ought to have been taken, but its true purpose is to correct the record which has been made. The only suggestion of such a clerical error or mistake, aside from the implications, if any, which can be raised from the findings, is the assertion in the petition, unsupported by any evidence, that it is well known to the commission and others familiar with the processing of "grandfather" applications, that many inadvertent errors were committed by stenographers, and that many times the findings and intentions of the commission as shown by the approved report were not fully and correctly reflected in the final order entered by the commission.

In proceedings to secure the correction of the record of a judgment or order nunc pro tunc on the ground of alleged clerical error therein, the party moving to correct the record bears the burden of proof. In any such case, there is a presumption that a judgment appearing on the record in the regular form is the judgment rendered by the court or administrative body and not an error of the clerk. See 30A Am. Jur., Judgments, § 622, p. 600.

It is certainly significant to note that in the case at bar, the order which the appellant seeks to correct nunc pro tunc was itself signed by the chairman of the commission who was one of the two commissioners who approved the examiner's report, findings, and recommendations. His signature on the order was attested by the secretary.

The appellant contends that the facts in this case are virtually identical with the facts in Watson Bros. Transportation Co. v. Red Ball Transfer Co., *supra,* and that this case should be governed by that case. There are, however, substantial differences in the two cases. Not the least of these is the fact that in the Red Ball case, the commission approved and granted the order nunc pro tunc, while in this case, the commission denied it. In the absence of a showing to the contrary, the court or administrative body ordering the nunc pro tunc amendment of its own records is presumed to have acted properly and to have been justified in making the amendment. See 30A Am. Jur., Judgments, § 622, p. 600.

In the Red Ball case there were four widely separated points of origin even as to the "main volume" of traffic and the destination points of the "main volume" of traffic were specifically "all points within the state." The transcript of the hearing in the Red Ball case shows that: "* * * the applicant produced his files and manifest sheets of movements of commodities generally * * * by days, during the year 1936 up to April 1, 1936, and to and from various points in the State of Nebraska at large." That record also shows that at the conclusion

of the hearing, the examiner stated: "My recommendation will be to the Commission that a certificate of public convenience and necessity be granted to your company in operations the same as you have related under your regular and irregular route operations."

While it is, of course, unfortunate that the transcript of the actual hearing in the case at bar was lost, nevertheless, the facts actually of record in the two cases are very substantially different.

While the appellant here introduced substantial evidence of irregular route shipments in the state at large commencing in 1943, none of this can be considered in determining whether an order entered in 1938 was erroneously entered. Such evidence only establishes that the appellant was openly conducting nonradial operations in 1943 and thereafter.

The appellant's contention is that a clerical error was somehow made in recording the action taken. The appellant's own testimony of his conference with the commission following the entry, however, discloses that the commission had no question as to the correctness of the record, although there may have been a misunderstanding as to the interpretation of it.

The real bone of contention here is that the words "and occasionally to and from various points within the State of Nebraska at large" have been held not intended to authorize operations to and from all locations in the state. See In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507.

Appellant seeks to have the 1938 order corrected to delete any reference to any point of origin, or any point of destination, and omit the word "occasionally," upon the ground that all of these were a clerical error or mistake. It is not the function of an order nunc pro tunc to change or revise a judgment or order, or to set aside a judgment actually rendered; nor to render an order different from the one actually rendered, even though the order actually rendered was not the order the com-

mission intended to render. An order nunc pro tunc "cannot be used to enlarge the judgment as originally rendered or to change the rights fixed by it as it was originally intended or made, nor can it be employed where the fault in the original judgment is that it is wrong as a matter of law or to allow the court to review and reverse its action with respect to what it formerly refused to do or assent to." 49 C. J. S., Judgments, § 258, p. 475.

On appeal to the Supreme Court from an order of the Nebraska State Railway Commission while acting within its jurisdiction, the question for determination is the sufficiency of the evidence to prove that the order is not unreasonable or arbitrary. In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603.

The action of the Nebraska State Railway Commission in denying the petition for an order nunc pro tunc was not unreasonable or arbitrary and the action of the commission should be and is affirmed.

AFFIRMED.