**UNITED STATES of America, ex rel. Charles H. GLASS, Appellant,**

v.

**MEDTRONIC, INC., Appellee.**

**No. 91–1160.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1991.

Decided Feb. 26, 1992.

---

**606**

Stewart C. Loper, St. Paul, Minn. and Charles H. Johnson & Associates, New Brighton, Minn., for appellant.

Sherwin J. Markman, Martha Roadstrum Moffett and Robert A. Begotka, Washington, D.C., and G. Alen Cunningham, Minneapolis, Minn., for appellee.

Before LAY,* Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Charles H. Glass appeals from a final order entered in the United States District Court [1] for the District of Minnesota granting partial summary judgment in favor of Medtronic, Inc. and dismissing his claims under the False Claims Act. 31 U.S.C.A. § 3729 *et seq.* (West 1983 & Supp.1991). *United States ex rel. Glass v. Medtronic, Inc.,* No. 3–88–547, 1990 WL 357536 (D.Minn. Aug. 28, 1990). For reversal, Glass argues that the district court erred in finding there was nothing false or fraudulent about Medtronic's advice to him to submit his medical bills to Medicare for payment. For the reasons discussed below, we affirm the order of the district court.

## I. FACTS

This case is a *qui tam* action on behalf of the government under the False Claims Act. 31 U.S.C.A. § 3730 (West Supp.1991). *Qui tam* plaintiff Charles Glass claimed that Medtronic violated the False Claims Act by telling him to submit his medical bills to Medicare when in fact Medtronic knew that it was liable for his medical bills. Glass sues on behalf of the government for all others similarly situated.

Medtronic is a company which designs and manufactures pacemakers for implantation. The sale of these pacemakers is

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

controlled by the Federal Food, Drug and Cosmetic Act under the Medical Device Amendments of 1976, 21 U.S.C.A. § 301 *et seq.* (West 1972 & Supp.1991). The Medical Device Amendments require that entirely new medical devices receive premarket approval from the Food and Drug Administration (FDA). *Id.* § 360e. Newly-manufactured devices which are "substantially equivalent" to a device that was marketed prior to May 28, 1976, need only file a 510(k) "premarket notification" with the FDA. *Id.*

On May 27, 1980, Medtronic filed a 510(k) report for a new pacemaker lead, model 4002. This premarket notification stated that both the inner and outer insulation of the 4002 lead would be polyurethane. After several months of production, the 4002's inner insulation was changed to silicone, but no new 510(k) notification was filed. Medtronic had used silicone insulation on pacemakers for many years and did not believe it significantly affected the safety or effectiveness of the pacemaker and thus believed that no new report was required.

The model 4002 was discontinued in 1984 due to the introduction of a more advanced pacemaker. In 1987, Medtronic issued a Medical Device Safety Alert for the 4002. This alert did not recall the pacemaker, but did warn doctors to monitor patients closely because the complication rate with the 4002 was higher than with other Medtronic models.

When the 4002 was marketed, it included a disclaimer which disclaimed all liability for defects. Effective January 4, 1984, Medtronic issued a limited warranty for all of its pacemakers which was applied retroactively. This warranty provided that if a defect in the pacemaker resulted in malfunction, Medtronic would issue a credit equal to the original purchase price and pay up to $600.00 of a patient's uninsured medical expenses associated with the replacement.

Charles Glass was implanted with a model 4002 pacemaker in February 1983. He began to experience an irregular heartbeat problem in mid–1985 and underwent surgery to replace the pacemaker in May 1986. In April 1986, prior to his replacement surgery, Glass called Medtronic to ask if it would pay for the medical expenses associated with the surgery. The Medtronic representative told Glass about the limited warranty and that his medical bills should be submitted to Medicare. His medical bills were submitted to and paid by Medicare. Medicare covers the reasonable costs of replacing pacemakers where medically necessary. 42 U.S.C.A. § 1395x(v) (West 1992).

Glass filed his initial complaint in August 1988 and the government filed a notice declining to prosecute in December 1988. In May 1989 Medtronic moved to dismiss on the ground that Glass was not an original source of the information on which the suit was based and thus the suit was jurisdictionally barred under 31 U.S.C.A. § 3730(e)(4)(A) (West Supp.1991). The district court denied this motion. On June 25, 1990, Medtronic filed a motion for partial summary judgment. This motion was granted and Glass now appeals.[2]

## II. ANALYSIS

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

We agree with the district court that Glass has failed to demonstrate that a

---

**2.** Following the district court's grant of partial summary judgment, Charles Glass's various state law claims which were not dismissed pursuant to the partial summary judgment were, according to a joint stipulation, dismissed without prejudice for lack of subject matter jurisdiction. *United States ex rel. Glass v. Medtronic, Inc.,* No. 3–88–547 (D.Minn. Dec. 3, 1990).

false or fraudulent claim was made and therefore summary judgment was proper. The False Claims Act holds any person liable who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C.A. § 3729(a) (West Supp.1991). In applying this statute, the district court found that two elements were necessary for Glass to prove a cause of action: (1) a claim for payment from the government was made and (2) the claim was false or fraudulent. *United States ex rel. Glass v. Medtronic, Inc.*, No. 3–88–547, slip op. at 5, *citing Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795, 808 (D.Utah 1988).

Glass contends that Medtronic, not Medicare, is responsible for the costs associated with the replacement of his pacemaker because the 4002 model with the changed inner insulation was illegally marketed without a new 510(k) premarket notification. Therefore, Glass argues, Medtronic caused a false claim to be filed when it told him to submit his claim to Medicare for reimbursement, when Medtronic knew it was responsible for any costs.

■ We need not decide whether Medtronic should have filed a new 510(k) report when it changed the inner insulation on the 4002 lead. Even assuming that Medtronic should have filed an updated 510(k) report and could therefore be liable for medical expenses relating to complications with the changed model 4002, Medtronic is not liable under the False Claims Act. The district court properly considered the Medicare statutes to make this determination.

■ The Medicare Intermediary Manual explicitly states that Medicare covers the cost of medical services associated with replacing defective medical devices even when the manufacturer of the device is liable under warranty for such devices. Health Care Financing Admin., U.S. Dep't of Health & Human Services, Medicare Intermediary Manual § 3152(D) (Apr.1988). Medicare, after it pays, is subrogated to the rights of the patient and can seek reimbursement from the manufacturer. 42 U.S.C.A. § 1395y(b)(2)(B)(iii) (West 1992). The payment of Medicare benefits is only improper when a prior determination is made that payment from another source is expected promptly. *Id.* § 1395y(b)(2)(A). Here, no prior determination had been made that payment could be expected promptly under Medtronic's liability insurance policy. Medicare, following its payment to Glass, could seek reimbursement from Medtronic. Therefore, it was proper for Glass to submit his claims to Medicare, and Medtronic's advice to Glass to do so was not false or fraudulent.

## III. CONCLUSION

Accordingly, we affirm the district court's grant of partial summary judgment.