989 F.2d 286
 82 Ed. Law Rep. 39
 Dale A. SCHEIDEMAN, Appellant,
v.
WEST DES MOINES COMMUNITY SCHOOL DISTRICT; Dale Grabinski,
Individually and in his official capacity as Superintendent
of the West Des Moines Community School District; Robert
Brooks, Individually and in his official capacity as
Principal of Valley High School of the West Des Moines
Community School District, Appellees.
 No. 92-2468.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 12, 1993.
Decided March 26, 1993.
Rehearing Denied April 29, 1993.
 
 James L. Sayre, Des Moines, IA, for appellant.
 Barbara A. Hering, Des Moines, IA, for appellees.
 Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Dale Scheideman appeals the decision of the District Court[1] granting summary judgment to the West Des Moines Community School District; Dale Grabinski, superintendent of the school district; and Robert Brooks, principal of Valley High School in the school district (collectively, the school district). We affirm.
 
 
 2
 Scheideman began working for the school district in 1968, and in 1988, when the events relevant to this case began, he was employed as a driver's education instructor at Valley High School.[2] Effective December 12, 1988, as a result of Scheideman's recent aberrant behavior at school, which included shouting and cursing at students, Scheideman began an indefinite, voluntary sick leave, using his accrued sick leave to stay on the payroll. In January 1989, the school district advised Scheideman that, because of its concern for the welfare of students who might be enrolled in classes taught by Scheideman, before permitting him to return to the classroom the district would require a second medical opinion, other than that of Scheideman's treating psychiatrist, to be given at the time Scheideman's psychiatrist certified him as ready to return to duty. Scheideman refused to agree to those terms.
 
 
 3
 Scheideman remained on paid sick leave through the remainder of the 1988-89 school year. In July 1989, Scheideman's treating psychiatrist certified him as ready to return to work, but no second opinion was sought. Although the school district did not instruct Scheideman to return for the start of the 1989-90 school year, he reported for duty on the first day of classes. He was sent home and did not return to work at all during the school year. He received, executed, and returned to the school district a teaching contract for 1989-90. In early September 1989, the school district advised Scheideman that he would be continued on sick leave status, and that his accumulated sick leave would be depleted on October 19, 1989. On November 21, 1989, he was sent a paycheck and informed that his personal and sick leave were exhausted on October 24, 1989, so that his pay and therefore the deductions to pay the premiums for his health insurance coverage had been discontinued. He was advised that his insurance was paid through the end of the calendar year and was asked how he wished to make future payments of premiums.
 
 
 4
 On December 6, 1989, Scheideman commenced grievance proceedings pursuant to the terms of the collective bargaining agreement between his union and the school district. On June 9, 1990, without waiting for the resolution of the grievance, Scheideman filed suit in the District Court. Arbitration hearings on Scheideman's grievance were held in August and September. On October 24, 1990, the arbitrator ruled that the school district was entitled to require a second medical opinion that Scheideman was fit to return to work, particularly in view of the nature of his position as a driver's education teacher. The arbitrator instructed the parties to work out a financial settlement, including consideration of back pay, and retained jurisdiction over future disputes in the matter.
 
 
 5
 Scheideman finally acquiesced to a second medical examination, he was declared fit, and he returned to work as a floating substitute teacher on April 15, 1991, for the remainder of the school year. The school district's attempts to reach the financial settlement urged by the arbitrator have been rebuffed by Scheideman's counsel.
 
 
 6
 Scheideman's complaint in the District Court alleges violation of his federal constitutional right to due process and a conspiracy among the school district defendants to deprive him of that right, and includes several state law claims. Specifically, Scheideman claims that he was deprived of a protected property right when the school district refused to allow him to return to work at the start of the 1989-90 school year without a second medical opinion. The District Court denied Scheideman's motion for partial summary judgment, granted the school district's motion for summary judgment on the federal claims, and dismissed the pendent state law claims. Scheideman appeals.
 
 
 7
 We review a district court's decision to grant summary judgment de novo, applying the same standard as applied by that court. United States ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir.1992). That is, we review the record in the light most favorable to Scheideman, and affirm the decision to grant the school district's motion for summary judgment if there remain no genuine issues of material fact and the school district is entitled to judgment as a matter of law. See id. Scheideman, by moving for partial summary judgment, conceded that there exists no genuine issue of material fact on the due process claim, and identifies no such factual issue on the federal conspiracy claim. Therefore we are left to consider only the District Court's conclusions of law.
 
 
 8
 The constitutional right at issue here is procedural due process. If Scheideman has a protected property interest in his continued employment by the school district, then he is entitled to due process before the school district may deprive him of that interest. See Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). It is Scheideman's contention that he indeed had a protected property interest in his job, of which he was deprived without due process--proper notice and a hearing--when the school district refused to allow him to return to work for the 1989-90 school year until he had been examined by a second medical professional and received a clean bill of health. He characterizes the school district's actions as a "de facto termination" that triggered the protections of due process. Brief of Appellant at 16. We disagree with Scheideman's analysis on several points.
 
 
 9
 All parties and the District Court agree that, under Iowa law, Scheideman had a protected interest in his teaching job with the school district. See Board of Directors v. Justmann, 476 N.W.2d 335, 339 (Iowa 1991). Scheideman insists, notwithstanding the conclusion of the District Court to the contrary, that the school district terminated him when it declined to allow him to return to work without a second medical opinion that he was fit. We disagree.
 
 
 10
 Scheideman began his leave voluntarily because of his acknowledged mental impairment. Soon after, although he did not agree to it, he understood that the school district required a second medical opinion before he would be permitted to return from the extended leave. He received, and executed, teaching contracts for the school years at issue, and was permitted to use accrued sick leave to remain on the payroll until that sick leave was exhausted. The school district never told Scheideman he was permanently barred from returning to work.
 
 
 11
 Scheideman returned to teaching in the school district in April 1991 when he finally realized (with the assistance of an arbitrator) that the school district's request for a second opinion was reasonable, especially in view of the subject matter he taught, and that he should cooperate. The school district denies terminating Scheideman and, in fact, during the months relevant to this case it sent him renewal teaching contracts and never instituted any of the termination proceedings required by Iowa law. See Iowa Code Ann. §§ 279.15, .27 (West 1988 & Supp.1992). We hold that there was no termination of Scheideman, "de facto" or otherwise, by the school district at any time during 1988 through 1991.
 
 
 12
 Moreover, we agree with the District Court that Scheideman received all the process he was due for the temporary albeit involuntary leave that the school district imposed upon him beginning with the 1989-90 school year.[3]
 
 
 13
 Due process requires that a person deprived of a property right be given an "opportunity to be heard 'at a meaningful time and in a meaningful manner.' " Mathews, 424 U.S. at 333, 96 S.Ct. at 902 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)) (emphasis added). The school district notified Scheideman months before he submitted certification stating that he was fit to return to duty (the act that precipitated the alleged deprivation) that a second medical opinion of fitness would be required before Scheideman could return to teaching. Pursuant to the collective bargaining agreement between the school district and the bargaining unit of which Scheideman was a member, Scheideman proceeded to grieve the school district's second opinion requirement,[4] but not until long after the alleged deprivation. The filing of that grievance was up to Scheideman, and he chose not to avail himself of the "opportunity to be heard" until nearly a year after he became aware of the school district's prerequisite for return to work. Further, he did not act for several months after the alleged deprivation, after the school district made it clear that the requirement of a second opinion was not debatable (by offering Scheideman a teaching contract, which he accepted, but refusing to allow him to return to teaching without the second opinion). In these circumstances, we conclude that Scheideman was not denied property without due process of law. See id. 424 U.S. at 334, 96 S.Ct. at 902 (due process is flexible and determination of the protections required calls for analysis of situation).
 
 
 14
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa
 
 
 [2]
 The record indicates that Scheideman was notified by letter dated March 12, 1992, that the school district intended to terminate Scheideman's contract at the end of the 1991-92 school year. We do not know whether that issue has been resolved and, in any event, that proposed termination is not before us
 
 
 [3]
 We will assume without deciding that the school district's placing Scheideman on indefinite involuntary leave deprived him of a protected property interest, entitling him to the safeguards of due process
 
 
 [4]
 It is apparent from the record and the briefs on appeal that the settlement discussions recommended after arbitration of Scheideman's grievance have stalled, evidently because of Scheideman's own actions. Even so, nothing in this opinion estops Scheideman from pursuing the remedies suggested by the arbitrator. We note that the arbitrator has retained jurisdiction, and presumably has authority to award Scheideman any back pay to which he may be entitled