Mary Dean HARVEY, as Director of the Nebraska State Department of Social Services, and The Department of Social Services of the State of Nebraska, Plaintiffs,

v.

Donna E. SHALALA, Secretary of the United States Department of Health and Human Services, and the Department of Health and Human Services, Defendant.

No. 4:cv92–3108.

United States District Court,
D. Nebraska.

May 14, 1993.

Royce N. Harper, Sr. Asst. Atty. Gen., Craig L. Nelson, Sp. Asst. Atty. Gen., Nebraska Dept. of Social Services, Lincoln, NE, for plaintiffs.

Sally R. Johnson, Asst. U.S. Atty., Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The plaintiffs in this matter seek judicial review of a final administrative decision of the Departmental Grant Appeals Board (DAB) of the U.S. Department of Health and Human Services. The DAB upheld a disallowance made by the Department of Health and Human Services, Administration for Children and Families (HSS or Agency, and ACF) in the amount of $474,140.00 in federal financial participation for foster care maintenance payments claimed by Nebraska for Fiscal Year 1987 under Title IV–E of the Social Security Act, 42 U.S.C. § 670 et seq. (the Child Welfare and Adoption Assistance Act). The parties stipulated that this matter should be resolved by the court upon cross motions for summary judgment (See filings 7, 13 and 16). The plaintiffs claim the decision of the DAB is arbitrary, capricious and not supported by substantial evidence in the record. The plaintiff's motion for summary judgment will be denied. The defendant's motion for summary judgment will be granted.

## FACTUAL BACKGROUND

In June 1988 "reviewers" from HHS conducted a Federal Financial Administrative Review of the Title IV–E Program in Ne-

braska for Fiscal Year 1987 to determine whether Nebraska's claims for this time period represented payments made on behalf of eligible children and to eligible providers at allowable rates. The review revealed that 9 out of 50 cases could not be accepted as eligible for Title IV–E reimbursement for the reason that the case files did not contain documentation of a court determination of "reasonable efforts" as required by 42 U.S.C. §§ 671(a)(15) and 672(a)(1). Plaintiffs were given an opportunity to provide additional documentation in these 9 cases to meet federal requirements for eligibility.[1]

The plaintiffs submitted "nunc pro tunc" orders (NPT orders) in 5 of the 9 cases, along with supplemental documentation which included original reports to the court in each of the cases, as well as any relevant documents referenced in the original court orders. The Nebraska Department of Social Services (NDSS) did not provide transcripts of the court proceedings. The defendant determined that the 5 NPT orders and the supplemental documentation did not satisfy the requirement for "judicial determination" at the time of removal and thus disallowed the NDSS claim for $474,140.00. The DAB affirmed the HSS decision because the statute requires two separate determinations by the judge at the time the child is removed from the home—that continued residence in the home would be "contrary to the welfare" of the child, and that "reasonable efforts" to

maintain the child in the home have been made, and none of the supplemental documents established that the necessary findings concerning reasonable efforts were made at the time of the removal of the children.

NDSS argues HSS does not have the authority to second guess "valid judgments of a court or question the motives of a court in entering an order." (Plaintiff's Reply Brief at 9).

## ISSUE ON APPEAL

The issue on appeal as characterized by the plaintiffs is whether the NPT orders submitted by the Nebraska Department of Social Services (NDSS) in 5 cases provided a sufficient basis for HHS to authorize payment of federal funds to Nebraska for foster care programs administered by the state pursuant to Title IV–E of the Social Security Act.[2]

In seeking repayment from Nebraska for the reimbursements which have now been disallowed, the defendant characterizes the issue as whether the judicial determinations made in the original orders in the 5 cases were sufficient to comply with 42 U.S.C. §§ 671(a)(15) and 672(a)(1), and, if not, whether the insufficiencies were cured by the subsequent NPT orders. (Defendant's Brief at 5).

1. Title IV–E is a joint federal-state program which provides that the states will be reimbursed for a certain percentage of foster care assistance payments which meet specific eligibility criteria.
   Section 671(a)(15) of the Social Security Act requires that before a state can be eligible for reimbursement, it must have a plan approved by the Secretary which:
   Effective October 1, 1983, provides that, in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home. Section 672(a)(1) provides that each state with a plan shall make foster care maintenance payments to a child if the
   removal from the home occurred pursuant to a voluntary placement agreement entered into by the child's parent or legal guardian, or was the result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child and (effective October 1, 1983) that reasonable efforts of the type

described in section 671(a)(15) of this title have been made.

2. If a state attempts to utilize nunc pro tunc orders to establish that the required findings were in fact made at the time of the original removal hearing, the Agency requires the state to "supply for the record something that has actually occurred, but was omitted from the record through inadvertence or mistake." (DAB Certified Record at 5, quoting 1987 HHS Information Memorandum regarding Nunc Pro Tunc Orders and Judicial Determination Requirements, DAB Certified Record at 179). Acceptable documentation in support of nunc pro tunc orders may include the transcript of court proceedings and/or the agency's report to the court or any other documentation that would confirm that the information was actually presented to the court at the **previous hearing and that the court made the determination(s) at that time.** (Emphasis added).

188

## STANDARD OF REVIEW

■ In reviewing decisions of the Department of Health and Human Services Grant Appeals Board, the district court must determine whether the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Under this standard the court is not free to substitute its own judgment, but is limited to determining whether the Board considered all relevant factors and whether the Board's decision is reasonable and in accordance with relevant statutes. *Connecticut DCYS v. DHHS,* 788 F.Supp. 573, 577 (D.D.C.1992).

The Adoption Assistance Act delegates to HHS the determination of what constitutes satisfactory compliance with the procedures required by the Act.[3]

## DISCUSSION

■ By December 28, 1983 the NDSS was aware that in order to comply with the terms of the Child Welfare and Adoption Assistance Act of 1980, 42 U.S.C. §§ 670–679, every court order pertaining to the removal of a child from his home should contain a statement that specific "judicial determinations have been made" reflecting the reasonable efforts made to prevent or eliminate the need for removal, and that efforts had been made to make it possible for the child to return home. The NDSS communicated this awareness to at least one state judge in December 1983 (DAB Certified Record at 187) and disseminated this same information to its administrative staff by way of procedural directive on March 5, 1984 (DAB Certified Record at 192). Contained in the letter and the directive was a statement that the specific statements are necessary for compliance

with the law, and compliance insures the continuation of reimbursements for foster care maintenance from federal funds. The NDSS also forwarded a proposed draft order developed by Lancaster County Juvenile Court Judge W.W. Nuernberger which simply permitted the presiding judge to circle the appropriate response for each specific finding (DAB Certified Record at 190).

Even though the NDSS was aware that specific findings were required at every removal hearing, and even though NDSS had a financial incentive to be sure the juvenile court judges were handling removal hearings correctly (DAB Certified Record at 9–10), the review of 1987 reimbursements revealed 5 original orders issued in 1986 which failed to contain the necessary judicial determinations. When the state was given the opportunity to provide additional documentation to HSS to attempt to prove compliance with the Act, (that the two required determinations were specifically made at the time of the original hearing), the state submitted 5 NPT orders along with "supporting documentation." (DAB Certified Record at 66–126). Four NPT orders were submitted on June 27, 1988 and one was submitted on July 7, 1988. All of the NPT orders contained paragraphs which first indicated "this matter came on for hearing" on a date in 1985 or 1986 and went on to state in a conclusory fashion that continuation in the home would have been contrary to the child's welfare; and that reasonable efforts were made prior to removal to prevent or eliminate the need for the child's removal. The supporting documentation submitted along with the NPT orders included the original court order and numerous state reports which had been prepared and presented to the court at the time

---

3. 42 U.S.C. § 671(b) leaves it to the Secretary of HHS to determine whether any state is complying with the Act which then entitles the state to reimbursement for foster care maintenance payments. This language has been interpreted to mean that the secretary's action is "committed to agency discretion by law." *Connecticut DCYS,* 788 F.Supp. at 578. NDSS argues that Congress did not speak directly to the issue of whether unsupported NPT orders should be acceptable substitutes for the proper judicial determinations in the initial court order, and therefore this court's analysis should center on whether the Agency's interpretation of the Act is reasonable

(Defendant's Brief at 14). Because the Agency has determined that the Act requires a high degree of certainty in ascertaining whether the specific findings have been made, this court concludes that the Agency's requirement of corroboration for NPT orders is reasonable, and that Congress intended for the Agency to determine how states can comply with the Act. The Agency's interpretation of the requirements of the Act for the use of NPT orders as stated in the 1987 Information Memorandum is a reasonable response to the Act's requirement that specific determinations must be made at the time a child is removed from his home.

of the initial hearings (DAB Certified Record at 6).

HSS and the DAB both determined that these reports did not satisfy the requirements for judicial determinations made at the time of the original hearing for the reason that reports to the court can only verify that the information was presented to the court. Such documents do not verify that the information was considered by the court or that a determination had been made. Therefore, the Agency and the DAB rejected the NPT orders and concluded they did not correct the original orders.[4] As compliance with the statute had not occurred in these 5 cases, reimbursement was disallowed.

The action by the Agency and the DAB appears to this court to be reasonable especially since all parties concede the purpose of an NPT order is to simply correct a clerical or other mistake in an original order, and not to expand the order. In *Application of Andrews*, 178 Neb. 799, 804, 135 N.W.2d 712, 716 (1965) the Nebraska Supreme Court defined the purpose of an NPT order:

> It must be borne in mind that the proper function of a nunc pro tunc order is not for the purpose of correcting some affirmative action of the court which ought to have been taken, but its true purpose is to correct the record which has been made so that it will truly record the action already had, but which through some inadvertence or mistake has not been truly recorded. In other words, it is in order to make the record speak the truth.

> We have also held that such a judgment must conform to and be no broader in its terms than the judgment actually rendered.

It strikes this court that if the NDSS was aware of the specific findings which each juvenile judge had to make in order to be in compliance with the Act, and if that awareness had been communicated to each juvenile judge, it is reasonable to expect that an affirmative finding that "reasonable efforts have been made to return the child to the home" should have been reflected in orders issued in 1985 and 1986 if such a finding was actually made at the time of the removal hearing. To issue 5 NPT orders long after the original removal hearing, and after the 5 cases have been specifically targeted as noncomplying cases, concerns this court even though the court recognizes the presumed validity of court orders.

NDSS was not able to provide transcripts of the original proceedings or court files to HHS and as a consequence it is impossible to know whether the specific findings were actually made in order to be confident that the NPT orders comport with Nebraska law on the purpose of NPT orders. The Agency's requirement that documentation establishing that the judicial findings were actually made must accompany NPT orders is a reasonable interpretation of the Act. Without accompanying corroborating documentation that the specific findings were actually made at the time of the original order it is not unreasonable to wonder whether the NPT orders accurately reflect the court's specific findings at the original hearing. And, as a consequence, it is not unreasonable to disallow the 5 cases which rely on the NPT orders for eligibility for reimbursement under the Act when actual court records have not been produced which would indicate that the specific findings were made at the time of the original hearing. As NPT orders cannot expand the scope of an original order, it was

---

4. The State argues the October 7, 1987 Information Memorandum which defines what is acceptable as corroborating documentation is unduly restrictive. In the 1987 Information Memorandum the Agency determined that while NPT orders were permissible to establish findings had been made, the NPT orders had to be supported by documentation since as a matter of course NPT orders are issued after the original hearing. The 1987 Information Memorandum (DAB Certified Record at 179–80) sets out the Agency policy on NPT orders. The Agency acted within its statutory authority in defining what it will con-

sider corroborative of NPT orders. It was Congress' intent to leave compliance methods to the Secretary's discretion. It is the statute itself, and not the Information Memorandum that creates the law and determines rights by mandating the behavior of the states. Agency Information Memorandums are interpretative documents which state what the Agency thinks the statute means. Information Memorandums do not create new law but rather provide guidance to the states and the Agency on how to comply with the act. *Connecticut DCYS*, 788 F.Supp. at 579.

reasonable for HSS and the DAB to disallow the reimbursement in the 5 cases at issue for the reason that the documentation provided to corroborate the NPT orders was merely factual background information and not evidence that an actual determination as required by statute had in fact been made.

## CONCLUSION

It was reasonable for the Agency and the DAB to disallow Nebraska's claim for reimbursement of $474,140.00 in federal participation funds under the Adoption Assistance Act because Nebraska could not show to the Agency's satisfaction that the judicial determinations required by statute had in fact been made at the time the children in the 5 cases in issue were removed from their homes. It was also reasonable for the Agency and the DAB to conclude that the NPT orders and the documents submitted in support of the NPT orders were not curative of the original deficiencies. The Agency's action was reasonable based on the discretion entrusted to it by statute. As a consequence, the court will deny plaintiffs' motion for summary judgment for the reason that the NDSS failed to comply with the judicial determination requirements as set forth at 42 U.S.C. §§ 671(a)(15) and 672(a)(1) and the Agency's action as affirmed by the DAB was reasonable. The court will grant the Agency's motion for summary judgment and affirm the findings of the DAB.

IT IS ORDERED that the plaintiff's motion for summary judgment (filing 13) is denied and the defendant's motion for summary judgment (filing 16) is granted.