Mary Dean HARVEY, as Director of the Nebraska State Department of Social Services; Department of Social Services of the State of Nebraska, Appellants,

v.

Donna SHALALA, as Secretary of the United States Department of Health and Human Services; United States Department of Health and Human Services, Appellees.

No. 93–2644.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1994.

Decided March 24, 1994.

Royce N. Harper, Sr. Asst. Atty. Gen., and Craig L. Nelson, Sp. Asst. Atty. Gen., of Lincoln, NE, for appellant.

Sally R. Johnson, Asst. U.S. Atty., of Lincoln, NE, for appellee.

Before BEAM, Circuit Judge, WELLFORD,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BEAM, Circuit Judge.

Mary Dean Harvey, Director of the Nebraska Department of Social Services (NDSS), appeals a grant of summary judgment by the district court in favor of Donna E. Shalala, Secretary of the United States Department of Health and Human Services (HHS). 824 F.Supp. 186. We affirm.

NDSS, an executive department of the Nebraska state government, administers federal funds made available through the Adoption Assistance and Child Welfare Act of 1980. The statute, 42 U.S.C. §§ 670–679, became effective on October 1, 1983. Title IV–E of the legislation provides federal money to defray part of the costs of foster care assistance under the Aid to Families with Dependant Children (AFDC) program. 42 U.S.C. § 670.

AFDC is designed to provide assistance to children by improving conditions in their homes. Title IV–E becomes relevant when, despite AFDC assistance, the best interest of the child demands that he or she be removed

---

* The HONORABLE HARRY W. WELLFORD, Senior Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

from the home. Congress, through AFDC, adopted a goal of keeping or reuniting children with their own families. The foster care system, on the other hand, contemplates removal of the child from the family home when reasonable circumstances dictate such a result.

To balance these concerns, Title IV–E requires that, prior to removal of a child from the home, a state court, in a formal removal order, must make specific findings that: (1) continuation in the home would be contrary to the welfare of the child, and (2) the state has made a reasonable effort to keep the child in the home. 42 U.S.C. § 672(a)(1). Legislative history indicates that Congress wanted states to make a legitimate effort to maintain family, as opposed to foster care, placement whenever possible. The required judicial determinations set forth above were designed to promote the policy. S.Rep. No. 336, 96th Cong., 2d Sess. 10, (1980), *reprinted in* 1980 U.S.C.C.A.N. 1450, 1464–65 and 1561.

The Administration for Children, Youth and Families (ACYF), part of HHS, superintends these expenditures. In 1988, ACYF instituted a review of a representative sample of foster care cases in Nebraska to oversee NDSS's use of the federal funds. The inspection found the required judicial determinations were absent in nine of fifty cases. The state submitted five nunc pro tunc Nebraska Juvenile Court orders to cure these deficiencies. After negotiation and appeal, ACYF disallowed $474,140 in federal financial participation. NDSS appealed to the HHS Departmental Appeals Board. The Appeals Board upheld the decision and NDSS appealed to the district court.

■ The issue in this case is whether nunc pro tunc orders making these judicial determinations, which were admittedly left out of the original removal orders, are sufficient under federal law. The district court found they were not, and we agree.

In 1984, almost four years before the Nebraska review, ACYF issued policy announcements concerning the "reasonable effort" requirements of 42 U.S.C. § 672(a)(1). Then, in 1987, it issued an "Information Memorandum" dealing with the use of nunc pro tunc orders and the documentation needed to support such orders. Thus, the issue here is not whether nunc pro tunc orders may be used, they may be, but whether those submitted by NDSS pass statutory muster.

■ NDSS makes several arguments for reversal. Its principal contention is, however, based upon the legal effect to be given a nunc pro tunc order entered by a Nebraska court of competent jurisdiction. This required, at least in part, an analysis of Nebraska law by the district court. Our consideration on appeal requires a de novo review with no deference being given to the interpretation made by the district judge. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 238, 111 S.Ct. 1217, 1221, 1224, 113 L.Ed.2d 190 (1991). Similarly, we review the grant of summary judgment de novo and view the evidence in the light most favorable to the nonmoving party. *United States ex rel. Glass v. Medtronic, Inc.,* 957 F.2d 605, 607 (8th Cir.1992). We have applied those standards of review to the legal findings and the factual conclusions of the district court. We believe that the district court has carefully and accurately reviewed and determined the issues raised by the parties and see no need to repeat the process in this opinion.

Accordingly, we affirm the judgment of the district court on the basis of its well reasoned opinion. *See* 8th Cir.R. 47B(1) and (4).

HARRY W. WELLFORD, Senior Circuit Judge, concurring.

I find this case to involve difficult and sensitive issues of federal/state relationship under a program of federal largesse to aid states in assisting children in very troubled and unsatisfactory home situations. I do not find that the district court erred in concluding:

1. The Agency acted within its statutory authority;

2. It was Congress' intent to leave compliance methods to the Secretary's discretion;

3. The Agency information memorandum in controversy was not unreasonable, arbitrary, or contrary to statutory require-

ments with regard to the necessary content of contemporaneous judicial determinations of "reasonable efforts."

We should not be misunderstood to indicate that *nunc pro tunc* orders, providing information required by statute, are necessarily or usually insufficient. The Secretary may, in such cases, look to whether the proposed retroactive change "truly record[s] the action already had." *Application of Andrews,* 178 Neb. 799, 801, 135 N.W.2d 712, 715 (1965). Such an order is proper to correct the record of judgment, but not to correct the judgment itself. Clerical errors may be corrected by an order *nunc pro tunc,* but judicial errors may not. *Larson v. Bedke,* 211 Neb. 247, 256, 318 N.W.2d 253, 258 (1982).

I, accordingly, concur in affirming the district court judgment.