# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-4056

_____

| | | |
|---|---|---|
| United States of America, | * | |
| Ex rel.; Lowell Quirk, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| Attorney General of the United States, | * | |
| | * | |
| Intervenor on Appeal, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | Minnesota. |
| | * | |
| Madonna Towers, Inc.; Madonna | * | |
| Towers of Rochester, Inc., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 18, 2001

Filed:  February 4, 2002

_____

Before MURPHY, BEAM, and BYE, Circuit Judges.

_____

BEAM, Circuit Judge.

Lowell Quirk appeals from a final order entered in the district court[1] granting summary judgment in favor of Madonna Towers, Inc. and Madonna Towers of Rochester, Inc. ("Madonna Towers") and dismissing his claims under the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA"). For the reasons discussed below, we affirm the order of the district court.

## I.    BACKGROUND

This case is a *qui tam* action brought on behalf of the government under the FCA. 31 U.S.C. § 3730(b). *Qui tam* plaintiff Lowell Quirk ("Appellant") claims that Madonna Towers violated the FCA by fraudulently submitting claims to Medicare for skilled nursing services provided to Appellant's aunt, Alice Quirk ("Quirk"), during the first ninety days of her stay in the skilled nursing facility.

Madonna Towers is a non-profit corporation that operates a combined residential and skilled nursing facility for the elderly. Upon entering the residential apartments in 1985, Quirk signed a Continuing Care Agreement ("CCA"), which required Quirk to pay an up-front fee in addition to monthly rent for the residential apartment. The CCA provided that if Quirk was ever transferred from her residential apartment into the skilled nursing facility, she would only be required to pay the residential fee for the first ninety days of occupancy, instead of the higher skilled nursing facility fee. Specifically, the CCA provided:

> When occupying Infirmary space, a Resident is entitled to the nursing care and housekeeping services provided for occupants of the Infirmary. During such occupancy the Resident shall continue to pay the applicable monthly care charge under the Resident's Agreement. Ninety days after a Resident has been certified as permanently transferred to the Infirmary

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

. . . the Resident shall be responsible for and pay the charges then in effect for Infirmary space and Infirmary services. These charges shall be in place of the applicable monthly care charge under the Resident's agreement.

In the summer of 1995, Quirk fell ill and was transferred from her residential unit to the skilled nursing facility. As the CCA provided, Quirk paid the lower residential rate during the first ninety days of her occupancy in the skilled nursing facility. Madonna Towers submitted claims for payment to Medicare for the services it provided during those ninety days. Appellant argues that it was illegal for Madonna Towers to submit those claims for payment because Medicare law provides, among other things, that no payment may be made for services provided if the person receiving such services "has no legal obligation to pay." 42 U.S.C. § 1395y(a)(2). Appellant contends that under the terms of the CCA Quirk was under no legal obligation to pay for the first ninety days of her stay in the skilled nursing unit, and therefore it was fraudulent for Madonna Towers to submit claims for payment to Medicare.

Madonna Towers, on the other hand, argues that the CCA did not provide Quirk with ninety "free" days in the skilled nursing facility, but that it provided for ninety "benefit" days, which the facility agreed to treat as pre-paid in consideration for the up-front fee and the monthly rent paid by Quirk. Under this reading of the contract, Madonna Towers argues, Quirk was legally obligated to pay for the first ninety days of her stay in the skilled nursing facility, and it was proper for it to submit the claim for payment to Medicare.

## II.    DISCUSSION

We review a grant of summary judgment de novo. The question before this court is whether the record, when viewed in a light most favorable to the non-moving

party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. United States ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir. 1992).

The FCA prohibits any person from knowingly presenting a false or fraudulent claim for payment or approval by the federal government. 31 U.S.C. § 3729(a)(1). A prima facie case under the statute requires that (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent. United States ex rel. Norbeck v. Basin Elec. Power Coop., 248 F.3d 781, 803 (8th Cir. 2001). Both parties concede that Madonna Towers made a claim against the United States. It is not necessary for us to resolve whether the claim Madonna Tower's submitted was false or fraudulent, because we conclude that the claim was not knowingly false or fraudulent.

"Knowingly" is defined by the FCA as meaning that a person, with respect to information:

(1)     has actual knowledge of the information;
(2)     acts in deliberate ignorance of the truth or falsity of the information; or
(3)     acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b). No proof of specific intent to defraud the government is required. Id. However, "innocent mistakes and negligence are not offenses under the Act." United States ex rel. Oliver v. Parsons Co., 195 F.3d 457, 464-65 (9th Cir. 1999) (internal quotations and citations omitted); see also Hindo v. University of Health Sciences/The Chicago Med. Sch., 65 F.3d 608, 613 (7th Cir. 1995) ("The requisite intent is the knowing presentation of what is known to be false. In short, the claim must be a lie.") (internal quotation and citations omitted).

-4-

Viewed in a light most favorable to Appellant, the record simply does not support the argument that Madonna Towers knowingly submitted a false or fraudulent claim when it billed Medicare for Quirk's first ninety days in the skilled nursing facility. As evidence that Madonna Towers knowingly submitted false claims, Appellant points us to the deposition testimony of the current administrator of Madonna Towers, Mr. Cairns, and the chief financial officer, Mr. Troska. However, these depositions merely reveal that Cairns and Troska did not seek legal advice, or an opinion from Medicare, concerning the practice of billing Medicare for the first ninety days of a patient's stay in a skilled nursing facility. This testimony does not demonstrate that the two men had "actual knowledge" of fraudulent billing practices. 31 U.S.C. § 3729(b)(1). This testimony also does not demonstrate that Cairns and Troska acted in "reckless disregard of the truth or falsity" of the submitted claims. Id. at § 3729(b)(3). At most, the failure to secure a legal opinion concerning the billing practices might be characterized as acting in "deliberate ignorance of the truth or falsity" of the submitted claims. Id. at § 3729(b)(2). However, failing to secure a legal opinion, without more, is not the type of deliberate ignorance that can form the basis for a FCA lawsuit. Cairns and Troska's declarations and depositions make it clear that neither of them had any reason to pursue a legal opinion concerning the billing practices because both of them considered the practice acceptable standard procedure.

For instance, Cairns testified that his previous employer administered its CCAs and billed Medicare in the same fashion as Madonna Towers. In addition, Cairns testified that it was his understanding that the up-front fee that the residents paid as part of the CCA operated as a form of insurance that allowed the resident to pay the lower residential rate during the first ninety days of residence in the skilled nursing facility. Under this view of the CCA, the first ninety days in the skilled nursing facility is not being provided free, but instead is provided in exchange for earlier payments made by the resident. In other words, it was Cairns' understanding that Quirk did have an obligation to pay for her first ninety days in the skilled nursing

facility, and he pointed to the up-front fee and her monthly residential rent payments as evidence of that obligation.[2] There is nothing in the record to suggest that anyone at Madonna Towers considered Quirk's initial stay in the skilled nursing facility to be gratuitous. The evidence in the record indicates that the employees at Madonna Towers considered the billing practice at issue here to be the generally accepted practice, akin to the way MediGap or long-term care insurance contracts are billed. There is no evidence to suggest anyone was lying to the government. See Hindo, 65 F.3d at 613.

In addition to the deposition testimony, Madonna Towers submitted the declarations of three of its administrators, the director of finance, the assistant administrator, the chief financial officer, and the nursing care accounts receivable clerk, all of whom declared that they did not have any knowledge that any false or fraudulent claims were submitted to Medicare. Appellant did not offer any evidence to refute these declarations.

In sum, the only evidence offered by Appellant that Madonna Towers knowingly submitted false claims to the government is the deposition testimony by facility officials that they did not seek legal advice concerning the propriety of their billing practices. Furthermore, Appellant has not submitted any evidence suggesting that anyone at Madonna Towers suspected something wrong but deliberately avoided learning more so that a fraudulent scheme could continue.

---

[2]This does not mean that Cairns' understanding of the CCA was legally correct. We are not deciding the issue of whether the submitted claims were in fact false or fraudulent. Our decision today is simply that Madonna Towers did not knowingly submit false or fraudulent claims.

## III. CONCLUSION

For the reasons stated, the decision below is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.