# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2965

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Taber Extrusions, LP, et al., | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted:   April 14, 2003

Filed:   August 27, 2003

_____

Before LOKEN, Chief Judge, HANSEN and BYE, Circuit Judges.

_____

LOKEN, Chief Judge.

In July 1993, defense contractor Precision Machining, Inc. (PMI) was awarded a contract to build aluminum ribbon bridges for the United States Army.  In the following months, PMI submitted three requests for progress payments based in part on "pro forma" invoices for aluminum extrusions from its independent supplier, Taber Extrusions, LP.  In 1998, officers of PMI pleaded guilty to criminal fraud, admitting that the progress payment requests had improperly included the amounts invoiced by Taber Extrusions as "incurred costs," i.e., current obligations PMI had either paid or recorded on its ledgers as accounts payable.  The United States then

brought this civil action against Taber Extrusions and two of its affiliates (collectively, "Taber"), alleging that Taber violated the False Claims Act, 31 U.S.C. §§ 3729-3733, by conspiring with PMI to submit false progress payment requests, and by causing the submission of false claims by issuing false invoices that PMI used to support its false progress payment requests. The district court granted summary judgment for the United States on its fraud claims. We review the grant of summary judgment de novo, viewing the facts in the light most favorable to Taber. See Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002) (standard of review). Concluding that genuine issues of material fact preclude the grant of summary judgment, we reverse.

We will review separately the two critical conclusions supporting the district court's decision to grant summary judgment for the plaintiff in this False Claims Act case. First, the court concluded that Taber's three invoices were "false or fraudulent" for purposes of 31 U.S.C. § 3729(a). In reaching this conclusion, the court accepted as true, indeed, as undisputed, the government's evidence (i) that under the applicable procurement regulations progress payments may only be based upon current obligations (incurred costs); and (ii) that the lack of the words "pro forma" on the Taber invoices caused them to be presented "as present, real, and current obligations," when in fact PMI had no current obligation to Taber. In our view, this analysis ignores Taber' evidence of the following genuinely disputed facts:

-- both Taber and the government knew PMI was in financial difficulty when it was awarded the aluminum ribbon bridges contract;

-- PMI was the contractor on another important military contract, so the government had a strong interest in PMI continuing in business;

-- PMI had used pro forma invoices from Taber to obtain progress payments on prior military contracts;

-- pro forma invoices are a device common in industry whereby a supplier advises a customer who is not credit-worthy what price the customer must pay before the supplier will assemble and ship a specific order;[1]

-- the invoices in question were obviously pro forma because they did not contain a shipping date or other shipping information;

-- PMI did not submit the Taber invoices to the government along with PMI's requests for progress payments;

-- after PMI had obtained progress payments based in part on the first two Taber invoices, a government audit revealed that Taber had shipped no aluminum; this confirmed the pro forma nature of the Taber invoices, yet the government then made a progress payment based on the third Taber invoice without objection.

This evidence, if believed, could lead a reasonable jury to find that the Taber invoices in question were not false or fraudulent. In addition, this evidence raises genuine issues of fact as to materiality and government knowledge, see United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 886-88 (8th Cir. 2003), and as to whether Taber's conduct caused the government to make the progress payments in question, see United States ex rel. Shaver v. Lucas Western Corp., 237 F.3d 932, 933-34 (8th Cir. 2001).

Second, the district court concluded that Taber acted knowingly, for purposes of False Claims Act liability, because more than one Taber employee admitted knowing that PMI would use the pro forma invoices to obtain progress payments. The difficulty with this analysis is that Taber was a supplier that did not deal directly

---

[1]This evidence is consistent with dictionary definitions of a pro forma invoice. Black's defines a pro forma invoice as an invoice "provided in advance to describe items, predict results, or secure approval." BLACK'S LAW DICTIONARY 1227 (7th ed. 1999). The Oxford English Dictionary defines it as "an invoice sent to a purchaser in advance of the ordered goods, so that formalities may be completed."

with the government. Without question, the first three subsections of 31 U.S.C. § 3729(a) are broad enough to "reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." United States ex rel. Marcus v. Hess, 317 U.S. 537, 544-45 (1943). But the issue is whether Taber "knowingly assisted" PMI's fraud. The Act defines "knowingly" to mean actual knowledge that the information was untrue or deliberate ignorance or reckless disregard of the truth or falsity of that information. See 31 U.S.C. § 3729(b). "However, innocent mistakes and negligence are not offenses under the Act. . . . In short, the claim must be a lie." United States ex rel. Quirk v. Madonna Towers, Inc., 278 F.3d 765, 767 (8th Cir. 2002) (quotations omitted). Thus, to hold Taber liable, either as a conspirator or as one who caused PMI's false claims to be made, the government must prove that Taber knew that PMI would use Taber's pro forma invoices in a manner which would cause the facts represented or omitted in the invoices to defraud the United States. See Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp., 276 F.3d 1032, 1053 (8th Cir.), cert. denied, 123 S. Ct. 345 (2002); Hindo v. Univ. of Health Sciences/Chicago Med. Sch., 65 F.3d 608, 613 (7th Cir. 1995), cert. denied, 516 U.S. 1114 (1996).

The government certainly has evidence creating the requisite inference, but Taber presented contrary evidence. Taber's officers denied knowing that pro forma invoices could not be used to support progress payment requests.[2] Taber's national sales manager testified that a progress payment "allows a supplier to recoup some needed costs to cover expenses while the contract is being completed because the contract in many respects is larger than the entity itself that's doing business with the government." Depending on factors such as witness credibility, a reasonable jury might find that Taber was reasonable in demanding payment in advance from the

[2]If Taber had no actual knowledge of what the government's progress payment regulations required, whether Taber as a second-tier supplier had a duty to inquire is clearly an issue for the ultimate fact-finder. Cf. Quirk, 278 F.3d at 768.

-4-

financially stressed PMI and in believing or assuming that the military might allow progress payments to fund PMI's advance payments to a critical vendor. Particularly when the issue turns on the defendant's intent or scienter, summary judgment for the plaintiff is inappropriate. See Pfizer, Inc. v. Int'l Rectifier Corp., 538 F.2d 180, 185 (8th Cir. 1976), cert. denied, 429 U.S. 1040 (1977).

In granting summary judgment in favor of the government, the district court stated that its analysis applied equally to all three False Claims Act counts in the government's amended complaint. Accordingly, the grant of summary judgment is reversed as to all three counts. Compare United States v. Murphy, 937 F.2d 1032, 1038-39 (6th Cir. 1991) (reversing summary judgment for the government on a False Claims Act conspiracy claim). The other issues discussed in the parties' briefs require no discussion at this interlocutory stage of the case.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.